OPINION
{¶ 1} Defendant-Appellant, Michael Ransom appeals a judgment of the Van Wert County Common Pleas Court finding him guilty of attempting to cause the unlawful termination of another's pregnancy (attempted murder), in violation of R.C. § 2923.02(A), 2903.02(A), with a firearm specification, of discharging a firearm into an occupied structure, in violation of R.C. § 2923.161(A)(1), with a firearm specification, and sentencing him to twenty-one years in prison. Ransom asserts that the trial court improperly allowed evidence of his prior conviction of murder; that his statement to the police should be suppressed because of the failure to give Miranda warnings; that his conviction is contrary to the manifest weight of the evidence; and that the trial court improperly sentenced him to maximum, consecutive sentences. Finding that there was sufficient evidence to convict the appellant, that the trial court properly allowed the evidence of his prior conviction as well as his statement to the police, and that the sentences were properly imposed, we affirm the judgment of the trial court.
 {¶ 2} In the evening hours of May 22, 2005, Ransom was driven by his girlfriend, Mary Miller, from Lima, Ohio to Van Wert, Ohio supposedly to "take care of a drug problem." She let him out of the car in a part of Van Wert that she was unfamiliar with. Miller testified that Ransom had a gun hidden in a football in his possession. She picked him up, less than five minutes later, and Ransom, being in a highly excited state, told her "it's done, let's go." The next day, Ransom disposed of the gun and Miller disposed of the extra bullets.
 {¶ 3} During that same time frame, Stephanie Ehman, who was pregnant with Ransom's child, was laying on the couch in her home in Van Wert, together with her son, watching television. She heard something break her window, and called 9-1-1. Upon investigation, a Van Wert Police officer recovered a bullet from the couch upon which she and her son had been at the time of the shooting.
 {¶ 4} During the subsequent investigation, Warren Upshaw, a friend Ransom's told the Van Wert Police that in February or March 2005, Ransom told him that he had gotten a white girl in Van Wert pregnant, that he wanted to get rid of the baby, and asked Upshaw if he could use one of his cars or his guns. Upshaw refused. Upshaw also told them that on May 31, 2005, Ransom admitted that he had shot the girl in the stomach, but that the baby did not die.
 {¶ 5} Thereafter, Ransom was indicted on three counts. Count I was for the attempted murder of Stephanie Ehman, a felony of the first degree; count II was for the attempted unlawful termination of her pregnancy, a felony of the first degree; and count III was for improperly discharging a firearm into a habitation, a felony of the second degree. Each count included a firearm specification. Ransom pled not guilty and was tried by a jury.
 {¶ 6} After deliberation, the jury found Ransom guilty of the attempted unlawful termination of Ehman's pregnancy and the firearm specification, and the improper discharge of a firearm in to a habitation and the firearm specification. The jury found him not guilty of the attempted murder of Ehman.
 {¶ 7} Following the verdict, Ransom was sentenced to ten years on the charge of attempting to unlawfully terminate Ehman's pregnancy, eight years on the charge of improperly discharging a firearm into a habitation, and three years on the firearm specification, with all of the sentences to run consecutively, for a total sentenced of twenty-one years in prison. It is from this judgment that Ransom appeals, presenting four assignments of error for our review.
 First Assignment of Error The trial court erred in allowing evidence of Appellant's prior conviction to be admitted at the trial.
 {¶ 8} In his first assignment of error, Ransom asserts that the trial court erred in admitting evidence of his prior conviction for second degree murder in the State of Washington on March 25, 1985, because more than ten years had elapsed from Ransom's release from prison. The state contends that Ransom has waived this error by presenting the evidence to the jury himself, prior to the state's cross examination of him, and that even if there was no waiver that Ransom was not released from supervision on his previous conviction until November 1, 1999, well within the then year limitation of Evid.R. 609(B).
 {¶ 9} On January 27, 2006, Ransom filed a motion in limine seeking an order that would prevent the use of his prior murder conviction at trial. The trial court considered this motion, and overruled the same on February 6, 2006, based upon a copy of a letter attached to the state's memorandum contra, indicating that Ransom was placed by the State of Washington on "monetary supervision" after his August 13, 1992 release from prison and finally released by the State of Washington from all supervision on November 1, 1999. In considering this hearsay statement, the trial court found that "monetary supervision" was included within the definition of "community control sanctions, post release control, or probation, shock probation or shock parole" as provided by Evid.R. 609(B). Therefore, the court found that the release was within ten years, and that the evidence of his prior felony conviction was admissible.
 {¶ 10} At trial, defense counsel called Ransom to the stand to testify, and during his direct testimony, the defense elicited testimony from Ransom concerning this prior conviction before the state had an opportunity to cross examine him. Consequently, Ransom made no objection at trial to the admission of the evidence, and he predicates this assignment of error on the ruling on the liminal motion only.
 {¶ 11} It must be first noted that a motion in limine is a request for a preliminary order regarding the admissibility of evidence that a party believes is improper. "The purpose of a motion in limine is to alert the court of the nature of the evidence in order to remove discussion of the evidence from the presence of the jury until the appropriate time during trial when the court makes a ruling on its admissibility." State v.Smith 2006-Ohio-4419, citing Riverside Methodist Hosp. Assn. of Ohio v.Guthrie (1982), 3 Ohio App.3d 308, 310.
 {¶ 12} It is well accepted that a ruling on a motion in limine is interlocutory in nature and cannot serve as the basis for reviewing error on appeal. State v. Grubb (1986), 28 Ohio St.3d 199, 201-202;State v. Brown (1988), 38 Ohio St.3d 305, 311-312.
 {¶ 13} We appreciate the tactical dilemma faced by the defendant in this case. As a result of the liminal ruling herein, Ransom was required to make a choice to either present the evidence himself, to soften the impact on the jury, or to wait until the state inquired on cross examination and object at trial to preserve the error for appeal. Nonetheless, by making the choice to not preserve the issue, we must presume that the choice was made knowingly, and Ransom cannot now raise it on appeal. See: State v. McMillan (Dec. 18, 1991), Franklin App. No. 89 CR 037143, unreported; State v. Earls (Mar. 19, 1993), Lake App. No. 92-L-054, unreported.
 {¶ 14} Nonetheless, where an appellant has failed to preserve an issue for review, we have the authority to recognize "plain errors or defects involving substantial rights." State v. Campbell (1994),69 Ohio St.3d 38, 41. However, in this case, we decline to find that the admission of this evidence constituted plain error, because by presenting the evidence himself, Ransom invited the error. "Under the invited error doctrine, a party will not be permitted to take advantage of an error which [sic] he himself invited or induced the trial court to make."State v. Totarella, 2004-Ohio-2414, at paragraph 38, quoting State exrel. Bitter v. Missig (1995), 72 Ohio St.3d 249, 254, citing State exrel Fowler v. Smith (1994), 68 Ohio St.3d 357, 359; Lester v. Leuck
(1943), 142 Ohio St. 91, paragraph one of the syllabus.
 {¶ 15} Therefore, the appellant's first assignment of error is overruled
 Second Assignment of Error The trial court erred in denying Appellant's motion to suppress.
 {¶ 16} In his second assignment of error, Ransom asserts that the interview of him, conducted at the Van Wert Police Department on May 24, 2005 constituted a custodial interrogation, and that the trial court therefore erred in failing to suppress his statement.
 {¶ 17} This standard of review regarding motions to suppress is whether the trial court's findings are supported by competent, credible evidence. State v. Vance (1994), 98 Ohio App.3d 56, 58-59; State v.Ferguson, 2002-Ohio-1763. "At a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact." State v. Mills (1992), 62 Ohio St.3d 357, 366. However, an appellate court will make an independent determination of the law as applied to the facts. Vance, at 59.
 {¶ 18} Appellant argues that the statements he made during a videotaped interview to Officer Bruns on May 24, 2005, should have been suppressed because, under the totality of the circumstances, a reasonable person would have believed that he was not free to leave, and was in custody during the interview. The state, however, claims that theMiranda warnings were not required because Ransom was not in custody when he made the statements.
 {¶ 19} In Miranda v. Arizona (1966), 384 U.S. 436, the United States Supreme Court set forth guidelines for the states to follow in preserving a criminal suspect's Fifth Amendment right against self-incrimination. State v. Walker (1993), 90 Ohio App.3d 352, 360. "Miranda mandates that all individuals who are taken into official custody must be advised of their constitutional rights under the Fifth and Sixth Amendments, and be given the chance to voluntarily waive those rights before being interrogated about suspected misbehavior."Walker, at 360. This ensures that any statement made by a suspect is voluntary and not coerced. Id.
 {¶ 20} However, only a "custodial interrogation triggers the need for aMiranda rights warning." State v. Mason (1998), 82 Ohio St.3d 144, 153;State v. Gumm (1995), 73 Ohio St.3d 413, 429. "[T]he determination as to whether a custodial interrogation has occurred requires an inquiry into `how a reasonable man in the suspect's position would have understood his situation.'" Mason, supra, at 154 quoting Berkemer v. McCarty
(1984), 468 U.S. 420, 442. "In judging whether an individual has been placed into custody the test is whether, under the totality of the circumstances, a `reasonable person would have believed that he was not free to leave.'" Gumm, supra, at 429, quoting United States v.Mendenhall (1980), 446 U.S. 544, 554. "The ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Mason, at 154 quotingCalifornia v. Beheler (1983), 463 U.S. 1121, 1125.
 {¶ 21} We must first consider whether Ransom was ever placed in custody. The record reflects that on May 24, 2005, Officer Bruns contacted Ransom by telephone at approximately 5:00 to 5:30 p.m. and asked Ransom if he would come from Lima to the Van Wert Police Department to discuss Stephanie Ehman. Ransom inquired as to what the problem was; however, Officer Bruns told him they would discuss it later. Ransom told Bruns he would come over after he got off work. Later, Ransom voluntarily appeared at the Van Wert Police Department. Bruns met him in the lobby and asked Ransom to accompany him to an interview room in the basement. After they were in the interview room, a videotape recorder was activated, and Bruns began to interview Ransom about the events of May 22. At some point in the interview, Detective Freeman came into the room and joined in the conversation. After the interview was completed, Bruns walked to the parking lot with Ransom, to look at his truck, and Ransom then left the Police Station.
 {¶ 22} After examining the evidence under the totality of the circumstances, we are not persuaded that the interview conducted at the Van Wert Police Department on May 24, 2005, was custodial in nature. The record reflects that Appellant was not placed under arrest either prior to or after the interview. "An arrest occurs when the following four requisite elements are involved: (1) An intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested." State v. Barker (1978),53 Ohio St.2d 135, 139, citing State v. Terry (1966), 5 Ohio App.2d 122, 128. There is nothing in the record that would indicate that there was any intent to arrest him, nor that Ransom ever thought himself to have been arrested. Instead, the record reflects that Ransom voluntarily came to and left the Police Department, and a reasonable person would not have understood himself to be under arrest under these circumstances.
 {¶ 23} Therefore, Ransom's second assignment of error is overruled.
 Third Assignment of Error The jury verdict is against the manifest weight of the evidence.
 {¶ 24} In his third assignment of error, Ransom asserts that his convictions were contrary to the manifest weight of the evidence.
 {¶ 25} When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins, (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.
 {¶ 26} Ransom claims that the state had no physical evidence to connect him to the crimes in question, and that the trier of fact should not have believed the testimony of either Ms. Miller or Mr. Upshaw, because both had changed their story before giving the police the information that implicated Ransom.
 {¶ 27} It is well settled that the state can establish proof of guilt through circumstantial evidence as well as through physical evidence and direct or testimonial evidence; all three classes have equal probative value. State v. Nicely (1988), 39 Ohio St.3d 147, 151; In reGrigson (Apr. 15, 1991), Scioto App. No. 1881, unreported. In this case, Ransom correctly points out that he submitted to a gun residue test that resulted in a negative finding. However, the sample was collected nearly two days after the shooting in question, and the Forensic Scientist from BCI testified that the gun residue particles fall off over time, and can be washed off immediately, resulting in a negative test. This scientist also testified that the optimum time for retrieving a testable sample is "two hours," not two days.
 {¶ 28} Here, there was testimonial evidence by Ransom's girlfriend, Mary Miller, that she drove Ransom to a location in Van Wert on the evening in question; that he was armed with a handgun; and that he came back to her vehicle in a highly agitated state five minutes afterwards, telling her "it's done, lets go." She also testified that on the next day, Ransom disposed of the gun and she disposed of the remaining ammunition.
 {¶ 29} There was also testimonial evidence from Warren Upshaw who testified that Ransom told him that "[h]e walked up to the window and shot through the window * * *." Ransom also told him that Mary drove the car; and that he had shot Ehman in the stomach, but that the baby did not die. Upshaw also testified that a couple of months prior to the shooting that Ransom had told him that he had gotten a white girl in Van Wert pregnant; that he didn't want to kill the mother, but that he wanted to kill the baby. Ransom also asked Upshaw on this occasion if he could borrow one of Upshaw's cars and one of his guns.
 {¶ 30} While the testimony demonstrates that neither Miller nor Upshaw initially told the police these details, we believe that it was appropriate for the trier of fact to have believed their testimony in this regard, and the belief of this testimony would be sufficient circumstantial evidence of guilt of both charges.
 {¶ 31} The remaining evidence that Ransom points to consists of his self-serving testimony denying any connection with the shooting event.
 {¶ 32} There is also no inconsistency between the jury's finding of not guilty on the attempted murder of Stephanie Ehman and the finding of guilty on the attempted murder of the unborn child. The testimony of Upshaw as to the earlier conversation with Ransom was that after Ransom told him that he wanted to kill the baby, "I said, you know that you could kill [Ehman] and he said he didn't want to kill her, he just basically wanted to get rid of the baby." While the jury was free to infer from the evidence of the intent to shoot Ehman in the stomach, that he intended to kill her, it was not required to make such inference.
 {¶ 33} After having reviewed the entire record and considered all of the conflicting evidence, we can not say that the jury clearly lost its way in finding Ransom guilty of either charge.
 {¶ 34} Accordingly, Ransom's third assignment of error is overruled.
 Fourth Assignment of Error The trial court erred when it imposed maximum sentences on each caseto run consecutively to each other.
 {¶ 35} In this assignment of error, Ransom argues that the trial court failed to follow the provisions of R.C. §§ 2929.11 and 2929.12. However, the Supreme Court has recently held in State v. Foster (2006),109 Ohio St.3d 1, at syllabus #7, that "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." In addition, the Supreme Court stated "[o]ur remedy does not rewrite the statutes, but leaves courts with full discretion to impose prison terms within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant without the mandated judicial findings of fact thatBlakely prohibits." Id. at paragraph 102. "Courts shall consider these portions of the sentencing code that are unaffected by today's decision and impose any sentence within the appropriate felony range. If an offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively." Id. at paragraph 105.
 {¶ 36} In addition, Foster altered the appellate court's standard of review for sentencing appeals from "clear and convincing" to "abuse of discretion." Id. at paragraphs 100 and 102. Accordingly, we must review this sentence under the abuse of discretion standard. In order to find an abuse of discretion, we must find that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court.
 {¶ 37} Upon a review of the record, we cannot say that the trial court abused its discretion in sentencing Ransom to twenty-one years in prison. He could have been sentenced to as little as six years or as much as twenty-one years for the two counts and specifications that he was found guilty of. Therefore, his sentence was within the statutory range.
 {¶ 38} Furthermore, the record reflects that the trial court considered the record, the information contained in the presentence investigation report as well as the victim impact statement, letters written to the court by the defendant and a friend, and the information presented at the sentencing hearing. The court also considered the factors pertaining to the seriousness of the offense, the likelihood of recidivism, and the purposes of R.C. § 2929.11.
 {¶ 39} Based upon the sentencing hearing and the subsequent judgment entry, we cannot find that the trial court acted unreasonably, arbitrarily, or unconscionably in sentencing Ransom. Therefore, Ransom's fourth assignment of error is overruled.
 {¶ 40} For the foregoing reasons, the judgment of the Van Wert County Common Pleas Court is hereby affirmed.
Judgment affirmed.
 ROGERS and SHAW, JJ., concur.
 (WALTERS, J., sitting by assignment in the Third AppellateDistrict.)