OPINION
{¶ 1} Defendant-Appellant, Isaac Ramos, aka Isaac Urbina, appeals the judgment of the Defiance County Court of Common Pleas, sentencing him to the maximum term of imprisonment for his involuntary manslaughter conviction. On appeal, Ramos asserts that the trial court erred in imposing the maximum sentence on him. Based on the following, we affirm the judgment of the trial court.
 {¶ 2} In April 2004, the Defiance County Grand Jury indicted Ramos for one count of involuntary manslaughter in violation of R.C. 2903.04(A), a felony of the first degree, and one count of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree, following an altercation that resulted in another's death. Subsequently, Ramos pled not guilty to both counts of the indictment.
 {¶ 3} On June 8, 2006, Ramos withdrew his not guilty plea and entered a negotiated plea of guilty to the involuntary manslaughter count in exchange for the dismissal of the felonious assault count.
 {¶ 4} On June 9, 2006, the trial court held a sentencing hearing, at which the following occurred.
 {¶ 5} First, the trial court noted that it had reviewed the victim impact statements and autopsy report. *Page 3 
 {¶ 6} Next, the State recited Ramos' prior criminal history and recounted the circumstances giving rise to his indictment. Specifically, the State indicated that Ramos had several convictions from Michigan,[1] including a 1989 felony conviction for possession of cocaine, a 1992 felony conviction for delivery or manufacture of a controlled substance, a 1997 misdemeanor conviction for malicious destruction of property, two separate 2000 felony charges for a third offense domestic violence that were later dismissed, and a 2004 misdemeanor conviction for domestic violence.
 {¶ 7} Additionally, the State recounted that on the evening of the incident, Raul Padilla, the decedent, his wife, and two other couples drove to a local restaurant in the city of Defiance. Ramos was already in the restaurant's parking lot and, when Padilla and the others exited from their vehicles, Ramos approached them and struck one of them, Roberto Martinez, in the face. Subsequently, Padilla, Martinez, and Martinez's father walked Ramos across the street.
 {¶ 8} The State continued that, according to witnesses of the incident, Ramos was "jumping like in a boxing fighting fashion and being very challenging towards these individuals." (Hearing Tr., p. 6). Ramos then struck Padilla under his chin with an upward motion, which either itself broke Padilla's neck or caused *Page 4 
him to fall to the ground, breaking his neck upon impact.[2] Padilla died from the injury. The State closed its statement by requesting that the trial court impose the maximum ten-year prison term.
 {¶ 9} Subsequently, Padilla's family members and friends spoke on his behalf, and also requested that the trial court impose the maximum sentence. One of Padilla's friends, who had been present the night of the incident, stated that Ramos also kicked Padilla in the face after he had fallen to the ground.
 {¶ 10} Next, Ramos' counsel stated that Ramos did not intend to kill Padilla; that Ramos' background was not primarily violent; that his past domestic violence convictions stemmed from a "very messy divorce"; that both he and Padilla had too much alcohol the night of the incident; and, that Ramos felt remorseful about the incident. (Hearing Tr., p. 12).
 {¶ 11} At that point, Ramos, his mother, and another witness to the incident spoke on Ramos' behalf. Ramos stated that Padilla's death was an accident; that he had tried to walk away from the fight but threw the punch because Padilla was going to strike him; and, he felt regretful and remorseful.
 {¶ 12} Ramos' mother indicated that Ramos came to Ohio to start a new life and did not intend to hurt anyone. *Page 5 
 {¶ 13} The witness stated that he watched the incident from a building across the street, and did not see Ramos strike anyone in the restaurant parking lot. The witness further stated that Ramos was not the aggressor and that he tried to get away from the others, but they "backed him up" in the yard across from the restaurant and underneath the witness' window. However, the witness did not see Ramos throw the punch that resulted in Padilla's death. (Hearing Tr., p. 18).
 {¶ 14} At the close of the parties' statements, the trial court addressed Ramos:
 You have a significant prior record. It includes offenses of violence. You've previously been incarcerated in various facilities. Um, if as your mother alluded to, you're down here to clean your life up and straighten your life up, you wouldn't be in that situation * * *.
 The sentencing statutes have recently been under scrutiny. The Ohio Supreme Court has severed certain unconstitutional portions of the sentencing law requiring the Court to make findings. The findings would, nevertheless, be instructive. Among the legislature's requirements in evaluating a sentence, it says if you're going to impose a maximum sentence, you reserve that for the worst form of the offense. This certainly approaches the worst form of the offense. If it were any worse than that, it would, in fact, have been murder and we'd be looking at fifteen to life or twenty to life. The prior record, a history of violence, the circumstances of the offense which if you speak — Obviously, I mean an explosively violent episode. I mean this isn't a glancing blow with a trip, I mean this was a massive impact. Taking all the matters into consideration that's required by statute, it's the Court's determination that the maximum term is appropriate.
(Hearing Tr., pp. 26-27). *Page 6 
 {¶ 15} On June 13, 2006, the trial court issued its judgment entry sentencing Ramos to the maximum term of ten years of imprisonment and ordering him to pay restitution. In doing so, the trial court found that Ramos' "prior record includes offenses of violence and felony convictions; that [he] has served prior prison terms; and further that this offense of Involuntary Manslaughter approaches the worst form of the offense." (Judgment Entry of Sentencing, p. 2).
 {¶ 16} It is from this judgment that Ramos appeals, presenting the following assignment of error for our review.
 THE SENTENCING COURT ERRED IN IMPOSING THE MAXIMUM SENTENCE ON DEFENDANT.
 {¶ 17} In his sole assignment of error, Ramos contends that the trial court erred in imposing the maximum sentence on him. Specifically, Ramos asserts that the trial court failed to comply with the purposes of sentencing under R.C. 2929.12 by finding that his conduct constituted the worst form of the offense because he administered only one punch to the decedent; that no evidence of recklessness, malicious intent, or callousness was presented; and, that he repeatedly expressed remorse at the sentencing hearing.
 {¶ 18} R.C. 2953.08 enumerates the grounds upon which a defendant or prosecutor may appeal a sentence imposed for a felony offense. Further, R.C. *Page 7 2953.08(G) sets forth the applicable standard of review for felony sentences, providing:
 (2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.[3]
 The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
 (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (D)(2)(e) or (E)(4) of section 2929.14, or division (H) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
 (b) That the sentence is otherwise contrary to law.
R.C. 2953.08(G)(2)(a)-(b) (emphases added). Thus, a reviewing court may only disturb a trial court's sentence if it finds by clear and convincing evidence that either the record does not support the sentencing court's findings under the *Page 8 
relevant statute or that the sentence is contrary to law. State v.Johnson, 2d Dist. No. 21332, 2006-Ohio-4934, ¶ 10. The defendant bears the burden of showing by clear and convincing evidence that the trial court's sentencing is not supported by the record or is contrary to law.State v. Rhodes, 12th Dist. No. CA2005-10-426, 2006-Ohio-2401, ¶ 4. Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus; State v. Boshko (2000), 139 Ohio App.3d 827, 835.
 {¶ 19} Before applying this standard to the case sub judice, we note that the Ohio Supreme Court's decision in Foster has created some confusion among the appellate courts, including this Court, regarding the viability of the appellate statute, R.C. 2953.08(G), and the applicable standard of review for appeals of certain felony offenses. InFoster, the Supreme Court altered Ohio's sentencing scheme by holding certain statutory provisions requiring judicial fact-finding before imposition of more than the minimum, the maximum, greater than the maximum, or consecutive sentences to be unconstitutional. The Court severed, where possible, those statutory provisions deemed unconstitutional. Foster, 2006-Ohio-856, at ¶ 99.
 {¶ 20} However, the Court did not sever R.C. 2953.08(G), but instead held that it was only rendered inapplicable "insofar as it refers to the severed sections." *Page 9 
Id.; see, also, Mathis, 2006-Ohio-855, at ¶ 27 ("R.C. 2953.08(G) no longer applies to require consecutive findings on the appellate record."); State v. Saxon, 109 Ohio St.3d 176, 2006-Ohio-1245, ¶ 4, fn. 1 ("the sentencing review statute, R.C. 2953.08(G), remains effective, although no longer relevant with respect to the statutory sections severed by Foster.").
 {¶ 21} Nonetheless, some appellate courts have construedFoster as completely excising R.C. 2953.08(G) and leaving a void as to the standard of review and, consequently, have applied the abuse of discretion standard to all appeals of felony sentences. See State v.Windham, 9th Dist. No. 05CA0033, 2006-Ohio-1544, ¶¶ 7, 11 (finding that "The Foster Court's removal of R.C. 2953.08(G)(2) from the statutory sentencing scheme eliminated the clear and convincing standard and left a void concerning the applicable standard of review in sentencing matters" and holding that the abuse of discretion standard now applies);State v. Firouzmandi, 5th Dist. No. 2006-CA-41, 2006-Ohio-5823, ¶ 37
(same, citing Windham).
 {¶ 22} Conversely, numerous appellate courts have continued to apply the clear and convincing evidence standard under R.C. 2953.08(G)(2). See, e.g., State v. Sheppard, 1st Dist. Nos. C-060042, C-060066,2007-Ohio-24, ¶ 16 (applying R.C. 2953.08(G)(2) standard post-Foster); State v. Parrish, 2d Dist. No. 21206, 2006-Ohio-4161, ¶ 62
(same); State v. Vickroy, 4th Dist. No. 06CA4, 2006-Ohio- *Page 10 
5461, ¶ 15 (same); State v. Espino, 6th Dist. No. L-06-1037,2006-Ohio-6055, ¶ 12 (same); State v. Warren, 7th Dist. No. 05 MA 91,2006-Ohio-1281, ¶¶ 12-17 (same); State v. Webb, 10th Dist. No. 06AP-147,2006-Ohio-4462, ¶ 11 (same); State v. White, 11th Dist. No. 2005-A-0086,2006-Ohio-5370, ¶ 13 (same); State v. Rice, 12th Dist. No. CA2006-01-002, 2006-Ohio-5511, ¶ 3 (same). Within this Court, on separate occasions we have inadvertently applied both the R.C.2953.08(G)(2) standard, see State v. Wagner, 3d Dist. No. 14-05-37,2006-Ohio-2375, ¶ 12, and the abuse of discretion standard recited by the Ninth District in Windham, supra. See, e.g., State v. Endicott, 3d Dist. No. 9-06-19, 2006-Ohio-5492, ¶ 8 and State v. Ransom, 3d Dist. No. 15-06-05, 2006-Ohio-6490, ¶ 36.
 {¶ 23} However, upon closer inspection of the Supreme Court's holding in Foster, we believe the appropriate standard of review for those cases appealed under the applicable provisions of R.C. 2953.08(A), (B), and (C), is that set forth in R.C. 2953.08(G)(2). Both subsections of R.C.2953.08(G) refer to only one provision severed by Foster, R.C.2929.14(E)(4), which dealt with consecutive sentences. R.C.2953.08(G)(1)-(2). Accordingly, the clear and convincing evidence standard of review set forth under R.C. 2953.08(G)(2) remains viable with respect to those cases appealed under the applicable provisions of R.C. 2953.08(A), (B), and (C), including the case sub judice. *Page 11 
 {¶ 24} Here, Ramos argues that the record does not support the sentencing court's findings that his conduct constituted the worst form of the offense because he administered only one punch to the decedent, no evidence of recklessness, malicious intent, or callousness was presented, and he repeatedly expressed remorse at the sentencing hearing. Therefore, Ramos claims, the trial court failed to comply with the purposes of sentencing under R.C. 2929.12.
 {¶ 25} R.C. 2929.12 provides:
 Unless otherwise required by [R.C. 2929.13 or R.C. 2929.14], a court that imposes a sentence under this chapter upon an offender for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in [R.C. 2929.11]. In exercising that discretion, the court shall consider the factors set forth in divisions (B) and (C) of this section relating to the seriousness of the conduct and the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing.
 {¶ 26} R.C. 2929.12(A). The purposes and principles of sentencing are to "protect the public from future crime by the offender" and to "punish the offender." R.C. 2929.11(A).[4]
 {¶ 27} Here, the prison term for a first degree felony ranges from three to ten years. R.C. 2929.14(A). The trial court sentenced Ramos to the maximum prison term of ten years, based on Ramos' prior record and convictions, which *Page 12 
included violent offenses, his prior incarcerations, and on its finding that his conduct amounted to the worst form of the offense. We note, as did the trial court, that following Foster trial courts now "have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences,"Foster, 2006-Ohio-856, at ¶ 100, except when making a downward departure under R.C. 2929.13(D) or R.C. 2929.20(H). Mathis, 2006-Ohio-855, at paragraph one of the syllabus. Thus, the trial court was not required to make any findings in imposing the maximum prison term upon Ramos; therefore, any findings it did make were superfluous.
 {¶ 28} Moreover, the trial court reviewed the victim impact statement, autopsy report, Ramos' prior record, and allowed Ramos, his mother, and a witness supportive of his version of events, as well as Padilla's friends and family, to speak at the sentencing hearing before sentencing Ramos. Given these facts, the circumstances surrounding Padilla's death, and the fact that the trial court imposed a sentence within the statutory range, we find that Ramos has failed to show by clear and convincing evidence that his sentence is not supported by the record, is otherwise contrary to law, or fails to comply with R.C. 2929.12.
 {¶ 29} Accordingly, Ramos' assignment of error is overruled. *Page 13 
 {¶ 30} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
SHAW and WALTERS, JJ., concur.
(Walters, J., sitting by assignment in the Third AppellateDistrict.)
 r
[1] Apparently, Ramos relocated from Michigan to Ohio sometime after 2004.
[2] In its appellate brief, the State also alleged that, after Padilla fell to the ground, Ramos kicked him in the head once, attempted to do so a second time, and later told police that he used to compete in kickboxing and golden gloves boxing.
[3] Ramos appeals pursuant to R.C. 2953.08(A), which provides, in pertinent part:
 In addition to any other right to appeal * * *, a defendant who * * * pleads guilty to a felony may appeal as a matter of right the sentence imposed upon the defendant on one of the following grounds:
 (1) The sentence consisted of or included the maximum prison term allowed for the offense by [R.C. 2929.14(A)], the sentence was not imposed pursuant to [R.C. 2929.14(D)(3)(b)], the maximum prison term was not required for the offense pursuant to Chapter 2925. or any other provision of the Revised Code, and the court imposed the sentence under one of the following circumstances:
 (a) The sentence was imposed for only one offense.
R.C. 2953.08(A)(1)(a). We note that the Ohio Supreme Court deemed R.C.2929.14(D)(2) and (3), which dealt with imposition of specified sentences for certain felony drug offenses, to be unconstitutional and severed them. State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, ¶ 99. Thus, it is no longer possible for any sentence imposed post-Foster to be imposed pursuant to R.C. 2929.14(D)(3)(b). Additionally, some of the grounds for a defendant's appeal as of right under R.C. 2953.08(A) are no longer available following Foster. SeeState v. Mathis, 109 Ohio St.3d 1, 2006-Ohio-855, ¶¶ 23-24.
[4] Post-Foster, trial courts are still required to consider R.C.2929.11 and R.C. 2929.12 when exercising their discretion in imposing a sentence. Mathis, 2006-Ohio-855, at ¶ 38. *Page 1