[Cite as *State v. Shaffer*, 2009-Ohio-4804.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### UNION COUNTY

STATE OF OHIO,

   PLAINTIFF-APPELLEE,                   CASE NO. 14-09-06

  v.

ANGEL ALLISON SHAFFER,
aka ANGEL ALLISON FREELAND,         O P I N I O N

   DEFENDANT-APPELLANT.

Appeal from Union County Common Pleas Court
Trial Court No. 08-CR-0089

Judgment Reversed and Cause Remanded

Date of Decision:  September 14, 2009

APPEARANCES:

    *Allison Boggs* for Appellant

    *Melissa A. Chase* for Appellee

**PRESTON, P.J.**

{¶1} Defendant-appellant, Angel Allison Shaffer (hereinafter "Shaffer"), appeals the Union County Court of Common Pleas' judgment entry of sentence. For the reasons that follow, we reverse.

{¶2} On July 16, 2008, the Union County Grand Jury indicted Shaffer on four counts, including: count one (1) of aggravated theft in violation of R.C. 2913.02(A)(1), (B)(2), a third degree felony; count two (2) of identity fraud in violation of R.C. 2913.49(B)(1), (I)(2), a second degree felony; and counts three (3) and four (4) of forgery, violations of R.C. 2913.31(A)(3), (C)(1)(a), (c)(iii), both second degree felonies. (Doc. No. 1).

{¶3} Shaffer entered a plea of not guilty to each count in the indictment at the August 22, 2008 arraignment. (Doc. No. 6). The trial court released Shaffer on a recognizance bond, and a scheduling conference was set for October 2, 2008. (Id.). Shaffer, however, failed to appear for the scheduling conference so the trial court revoked Shaffer's bond and issued a capias order for her arrest. (Doc. No. 19).

{¶4} A jury trial was scheduled for December 18, 2008, but, on December 15, 2008, Shaffer signed an entry withdrawing her previously tendered not guilty plea and entering a plea of guilty to counts one and two of the indictment. (Doc. Nos. 23, 48). The State agreed to dismiss counts three and four. (Doc. No. 48).

The trial court accepted Shaffer's change in plea, dismissed counts three and four of the indictment, and referred the matter for a pre-sentence investigation (PSI) report. (Id.).

{¶5} On March 3, 2009, the trial court sentenced Shaffer to three (3) years imprisonment on count one and five (5) years imprisonment on count two. (Doc. No. 61). The trial court ordered that the terms be served concurrently for a combined total of five (5) years. (Id.). The trial court further ordered that Shaffer pay all costs of prosecution, court appointed counsel fees—including $500.00 in reimbursement to Union County for costs of providing indigent counsel—, R.C. 2929.18(A)(4) fees, and restitution to the victim, Fred Shaffer, in the amount of $50,433.00. (Id.).

{¶6} On March 31, 2009, Shaffer filed a notice of appeal from the trial court's judgment entry of sentence. (Doc. No. 67). On April 23, 2009, Shaffer filed a motion to suspend further execution of her sentence in the trial court, but said motion was denied. (Doc. Nos. 72, 75). Shaffer now appeals raising one assignment of error for our review.

**ASSIGNMENT OF ERROR**

**THE TRIAL COURT ERRED WHEN IT ORDERED RESTITUTION WITHOUT ESTABLISHING THE ACTUAL FINANCIAL LOSS TO THE VICTIM AND FURTHER ERRED WHEN IT ORDERED THE PAYMENT OF COURT COSTS, INDIGENT COUNSEL FEES ALONG WITH THE RSETITUTION [SIC] WITHOUT DETERMINING**

**WHETHER APPELLANT HAD A PRESENT OR FUTURE ABILITY TO PAY THESE COSTS.**

{¶7} In her sole assignment of error, Shaffer argues that the trial court erred in ordering restitution without holding a full and separate hearing to determine the actual amount of financial loss to the victim. Shaffer further argues that the trial court erred when it ordered her to pay restitution, court costs, and indigent counsel fees without first determining whether she had a present or future ability to pay such costs.

{¶8} The State argues that a full hearing was not necessary to determine the actual loss to the victim since the trial court had a certified copy of the civil judgment entry in favor of the victim, Fred Shaffer, and against Shaffer—who was a third-party defendant in the related civil case. As such, the State argues that a full hearing to determine the amount of restitution was not required, because this issue had already been fully litigated in the related civil proceeding, was never appealed, and is now res judicata. The State further argues that the trial court is required to assess costs, including counsel fees, against indigent defendants pursuant to R.C. 2947.23(A)(1) without regard to the defendant's ability to pay. Furthermore, the State argues that there is evidence upon which the trial court could have concluded that Shaffer had a future ability to pay these costs; and therefore, the trial court did not err in ordering the payment of costs and restitution.

**{¶9}** We review a trial court's decision to impose restitution under abuse of discretion standard of review. *State v. Griffus*, 3d Dist. No. 14-08-39, 2009-Ohio-304, ¶7, citing *State v. Lamere*, 3d Dist. No. 1-07-11, 2007-Ohio-4930, ¶¶ 6-7. Likewise, we review a trial court's determination of the defendant's ability to pay restitution under an abuse of discretion standard. *State v. Alvarez*, 3d Dist. No. 4-08-02, 2008-Ohio-5189, ¶27, citing *State v. Brewer* (Jan. 28, 1998), 3d Dist. No. 2-97-20, at *3; *State v. Horton* (1993), 85 Ohio App.3d 268, 619 N.E.2d 527; *State v. Myers*, 9th Dist. No. 06CA0003, 2006-Ohio-5958, ¶12. An abuse of discretion is more than an error of law; rather, it suggests that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. "[T]he amount of the restitution must be supported by competent, credible evidence in the record from which the court can discern the amount of the restitution to a reasonable degree of certainty." *State v. Didion*, 173 Ohio App.3d 130, 2007-Ohio-4494, 877 N.E.2d 725, ¶20, quoting *State v. Policaro*, 10th Dist. No. 06AP-913, 2007-Ohio-1469, ¶7, citing *State v. Sommer*, 154 Ohio App.3d 421, 2003-Ohio-5022, 797 N.E.2d 559; *State v. Gears* (1999), 135 Ohio App.3d 297, 300, 733 N.E.2d 683.

**{¶10}** At the time of Shaffer's offenses—on or about March 22-29, 2009—R.C. 2929.18 provided, in pertinent part:

> **(A) Except as otherwise provided in this division and in addition to imposing court costs pursuant to section 2947.23 of the**

-5-

> **Revised Code, the court imposing a sentence upon an offender for a felony may sentence the offender to \* \* \* the following:**
>
> **(1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. \* \* \* If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense.** *If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount.*

S.B. 17, eff. 9-30-08 (emphasis added); (Doc. No. 1); *State v. Kanniard*, 3d Dist. No. 9-07-21, 2008-Ohio-518, ¶17 (appellate court considers the version of R.C. 2929.18 in effect when the offense was committed). See also, *State v. Kreischer*, 109 Ohio St.3d 391, 2006-Ohio-2706, 848 N.E.2d 496, ¶¶8-13 (applying version of R.C. 2929.18(A) that was in effect at the time of the offense).

{¶11} During the State's preliminary remarks at the March 3, 2009 sentencing hearing, the State requested that Shaffer be ordered to pay restitution in the amount of $50,433.00 to the victim. (Mar. 3, 2009 Tr. at 6). This amount was determined from the judgment entry in favor of the victim and against Shaffer in the related civil case. (Id.); (Id. at 44-45); (State's Ex. 2). At the conclusion of the State's opening statement, the prosecutor asked, "[a]re we in agreement on the

restitution figure?" (Mar. 3, 2009 Tr. at 10). Defense counsel responded, "I'd like to argue the point. I'll agree that your exhibit, however, is what was ordered out of the civil case." (Id.). The prosecutor, then, asked defense counsel whether he had "other evidence," presumably to rebut the figure provided by the State. (Id.) At this point, the trial court stated, "[l]ets let him present the evidence when it's his turn," to which the prosecutor agreed and called the victim to the stand. (Id.).

{¶12} The victim, the defendant's former husband Fred Shaffer (hereinafter "Fred"), testified, in relevant part, that he obtained a civil judgment against Shaffer in the amount of $50,443.14 for the amount of money he lost as a result of Shaffer's actions. (Id. at 13, 18-19); (State's Ex. 2). After the prosecution finished its direct examination of Fred, the following dialogue occurred:

> **THE COURT: Am I to understand that Exhibit A [sic] is joint --**
> **agreed to be admitted? I understand you want to argue about it,**
> **but am I to understand that there's no argument as to whether**
> **or not it's to be admitted?**
> **MR. HORD: It's a certified copy. It's self-authenticating.**
> **MR. WOLFE: Appears to be genuine, your Honor.**
> **THE COURT: So the answer's yes?**
> **MR. WOLFE: Yes, your Honor.**

(Mar. 3, 2009 Tr. at 25). On cross-examination, defense counsel questioned Fred about whether or not any of his prior loan obligations were now satisfied as a result of Shaffer's conduct. (Id. at 26-31). The pertinent portion of that testimony is as follows:

**Q: * * * Mr. Shaffer, isn't it a fact that, I mean, despite all the wrongdoing Angel engaged in to put your son up to this refinance, that out at that closing there were many of these debts there were paid off?**

**A: Yeah. At the time I didn't know it. When she done this, I didn't know she done it.**

**Q: Now, are there still debts out there that were not paid off at the -- out of the wrongful refinance?**

**A: Well, at Huntington National Bank where I thought I had some money, they're still owed $3,100. She was caught kiting among the banks. I went in and talked at Huntington National, I went in and talked to National City and they had told me that they realized it wasn't me. * * * they said Mr. Shaffer must not know what's going on because they got her on tape at trying to deposit large amounts of checks. And they caught her -- what the word is called kiting.**

**Q: Let me ask you a different question here, Mr. --**

**A: Yeah. I know where you're getting to about stuff that ain't paid off. I'm still fighting credit card debts that she had rang up that I did not create.**

**Q: But it is a fact that the existing first and second mortgages on the property, those were paid off out of the wrongful refinance, is that true?**

**A: Well, the paperwork that I happened to see, yes, you're right. She paid that off. But then in 28 days she ran it up another $45,000 in 28 days.**

**Q: Ran what up, sir?**

**\* \* \***

**A: The home equity line of credit.**

**Q: So that there was a new home equity line of credit?**

**A: Instead of them closing the home equity line of credit down like it should have been done, they allowed her to go in and write checks for another $45,000 in 28 days.**

**Q: Was your -- was your four-wheeler paid off out of the refinance?**

**A: Now, that I don't know. You see, I had money in my savings account. She brought me the cash that supposedly came from the savings. She said specifically come from the savings.**

**Q: So you don't --**

**A: I did not know nothing about Chase.**

Q: Was the four-wheeler paid off?

A: The four-wheelers were paid in cash, sir.

Q: Okay. And that was an obligation that was in your name up to that point, is that right?

A: The bikes were in my name, yes, sir.

Q: Was it about $9,000?

A: Roughly, yes. And I had over that in my account.

Q: And then did you have a camper that [sic] about 3,000 was owed on that was paid out of this refinance?

A: Yes, I did.

Q: And a truck that was paid off --

A: Now, the truck was paid out of my savings account. It was supposed to have been.

Q: Did you do it or somebody else?

A: No. I had her walk into the bank. I said take enough out and I said pay my truck off because I had got a bonus check from where I worked and it was practically enough to pay my truck off.

Q: Now, did you ever go back and look at the savings account to see if the truck payoff was taken out of there?

A: No, I did not. I did not do that.

Q: You don't know whether 6,000 was taken out of your savings?

A: Well, there's a lot of stuff I don't really know.

Q: Is it possible --

A: All I know at one time I had money in the bank account and a lot of the stuff that took place I never even knew that happened. That's all I can tell you.

Q: Well, is it a fact that the truck is now paid off?

A: Well, yeah.

Q: And that you don't know where that money came from?

A: Well, supposedly the money was supposed to come out of my savings. Now, if you're trying to get me to say that it came from this other, I can't answer that for you because I don't know.

* * *

Q: Now, sir, have you looked -- after the fact, have you gone back and looked at the closing statement out of this wrongful refinance like where it talks about all the monies that were paid out at the closing?

A: I seen that. Yes, I have. But was I aware of it? No. I wasn't.

**Q: But do you now agree that there were many things that were paid off out of the refinance that she did.**

* * *

**A: Yeah. I guess so. I'd have to say there was.**

**Q: And those are now things that you don't have to pay?**

* * *

**A: If that's how you want to put it.**

* * *

**Q: And you had a red car that was paid off to the tune of $1,500?**

**A: A red car?**

**Q: Angel's car.**

**A: I don't know nothing about that. That was her car. She told me -- she told me specifically that her mother gave her the money for that car.**

* * *

**Q: Now, did you and Angel take some trips to West Virginia after this wrongful refinance was done?**

**A: Yes. I went to West Virginia.**

**Q: And did she give some money toward the expenses for those trips?**

* * *

**A: She had some money. But there again, she said this was money that her mother had given her is what she had said.**

* * *

**Q: So you might have benefited from some of these monies that she took out in the refinance?**

* * *

**A: The truth of the matter is if it happened, I did not know about it. It was wrongfully.**

(Id.).

**{¶13}** Fred was the only witness at the sentencing hearing, and following his testimony defense counsel stated its recommendations to the trial court, in relevant part, as follows:

-10-

**MR. WOLFE: \* \* \* I'd also like to let the Court know that I have received State's exhibits on the judgment out of the civil case in the amount of $50,443.14. And that does appear to be a judgment awarded to Fred Shaffer against Angel Shaffer. However, I'm told by my client and it's also evident from the Court's records that other than giving a deposition, Angel didn't really participate in the litigation. So this is essentially a default judgment and it's unclear to me how this figure is arrived at, at least from the exhibit. What I have looked at, your Honor, and I tried to get into a little bit with Mr. Shaffer was the HUD One settlement statement that's contained in the Court's file. And when you look at that, it appears that the money that was paid out of the closing to the defendant was $6,190.84. The remaining monies were paid to various creditors. And I don't know about what Mr. Shaffer said about the home equity credit line being recharged up after the fact. But at least what's on the HUD One indicates that she took $6,190.84 at the closing. And I'm advised by Angel that a lot of that money was spent when the two of them took trips to West Virginia together. So, I don't know what the Court would feel is just regarding the expenditure of those monies. But I did take a look at Revised Code 2929.18 regarding financial sanctions. And in Section A 1 it talks about the Court needing to order restitution in an amount based on the victim's economic loss. And so if we go by the HUD One and we look at those obligations that were paid off, I don't see how those can be a loss. It's also unclear to me what's contained within the $50,000 order out of the civil case. So Angel is ready, willing, and able to make restitution for the actual loss to the victim. That (INAUDIBLE) figure just because I don't know how that was arrived at or whether that's a just order to be made.**

(Id. at 42-43). Thereafter, the State made its closing arguments, in relevant part, as follows:

**MR. HORD: \* \* \* Yes, there is a settlement statement. But quite frankly, that settlement statement is signed by allegedly Fred Shaffer, but it was Brian Shaffer who signed it. There is in fact and we've indicated there were payments that came out of it to the tune of ninety-nine thousand approximately $656, $657**

-11-

**that would have been relative to prior mortgages. Now, the total amount of that refinance was $140,250. It does not take a rocket scientist to figure out that there's over $40,000 there alone that are relative to this. What the 2929.18 talks about is restitution for the financial loss. The loss that Mr. Shaffer has encountered as a result of this was litigated significantly. It was not a default judgment. The defendant chose for whatever reason to be pro se. There is -- was extensive discovery and pleadings in that case which ultimately culminated in the certified entry that has been provided to the Court. Now, if I was going to prepare [sic] the two, how much weight do I give the HUD One closing statement that was actually part of the litigation where the parties involved actually litigated it in this court and then resolved it with the fact that the defendant in that case, a civil defendant, owed the plaintiff defendant Fred Shaffer the amount of 50,000 – approximately $50,433. That is clear. That was the full civil litigation of it. How she chose to participate is irrelevant. The fact of the matter is it's a certified entry. There's no other evidence. The Court can take judicial notice of its ruling. As far as the victim Fred Shaffer, he was very clear.**

(Id. at 44-45). No further discussion was had regarding the amount of restitution, and the trial court, thereafter, ordered that Shaffer pay the victim $50,433.00 in restitution. (Id. at 53).

{¶14} On the basis of the record before us, we cannot conclude that the trial court abused its discretion in ordering that Shaffer pay the victim restitution in the amount of $50,433.00. To begin with, we reject Shaffer's argument that the trial court failed to conduct a hearing on restitution as required by R.C. 2929.18(A)(1). In fact, what is clear from the testimony presented is that the trial court did consider evidence relating to the appropriate amount of restitution—that Shaffer failed to offer evidence on this issue is irrelevant. Shaffer, however,

argues that she was entitled to a "full" and "separate" hearing on the issue of restitution once she disputed the amount of restitution. R.C. 2929.18(A)(1)'s plain language imposes no such requirements; rather the plain language requires only that the trial court "shall hold a hearing." As this Court has noted before, trial courts may hold the restitution hearing *as part of* the sentencing hearing under certain circumstances. *Didion*, 2007-Ohio-4494, at ¶16.

{¶15} Although this Court in dicta may have implied in other cases that R.C. 2929.18(A)(1) required a separate hearing, we believe the facts and circumstances here are such that the trial court did not abuse its discretion by failing to hold a separate hearing. See, e.g., *Griffus*, 2009-Ohio-304, at ¶¶10-11. To start with, defense counsel made no request for either a continuance or a separate hearing. Defense counsel participated at the hearing as if the court was holding a restitution hearing, questioning the victim regarding any benefits he may have received from the fraudulent refinance and arguing as to the correct amount of restitution. (Mar. 3, 2009 Tr. at 26-31, 42-43). Defense counsel should have known—if defense counsel did not in fact know—that the amount of restitution would be an issue at sentencing. (See, e.g., Restitution Reports filed Feb. 5 & Mar. 2, 2009, Doc. Nos. 51, 60). Defense counsel also indicated during the hearing that Shaffer's mother was present to testify but decided not to have her testify. (Id. at 40). Shaffer has not even asserted on appeal what, if any, evidence she would

have produced at a separate hearing to refute the amount of the restitution ordered. Furthermore, any alleged error was invited by the defendant's participation, without objection, in the combined sentencing/restitution hearing, and defendant cannot take advantage of this alleged error on appeal. *State v. Monnette*, 3d Dist. No. 9-08-33, 2009-Ohio-1653, ¶12, citing *State v. Ransom*, 3d Dist. No. 15-06-05, 2006-Ohio-6490, ¶14. For all these reasons, we find that Shaffer's argument with regard to the restitution hearing meritless.

{¶16} Having reviewed the entire record, we also find that the trial court's restitution order was supported by competent, credible evidence. *Didion*, 2007-Ohio-4494, at ¶20, quoting *Policaro*, 2007-Ohio-1469, at ¶7, citing *Sommer*, 2003-Ohio-5022; *Gears*, 135 Ohio App.3d at 300. R.C. 2929.18(A)(1) specifically states that, "* * * the court may base the amount of restitution it orders on an *amount recommended by the victim*, the offender, a presentence investigation, estimates or receipts indicating the cost of repairing or replacing property, and *other information* * * *." (Emphasis added). The victim, Fred Shaffer, testified that State's exhibit two was a civil judgment in his favor against the defendant-appellant for $50,443.14 stemming from a civil lawsuit, which Fred described as: "* * * more or less money that I had lost and what she has -- how much she has costed me." (Mar. 3, 2009 Tr. at 18-19). State's exhibit two was also entered into evidence. (Id. at 49). We cannot find that the trial court abused

its discretion by ordering that Shaffer pay $50,433.00 in restitution, because the trial court had competent, credible evidence in the record supporting this amount.

{¶17} With regard to whether $50,433.00 was "the amount of the economic loss suffered by the victim," Shaffer's primary concern, the trial court considered testimony presented through cross-examination that the victim had benefited by Shaffer's criminal acts since several of the loans for which he was liable were paid off out of the fraudulent refinance. (Mar. 3, 2009 Tr. at 26-31); R.C. 2929.18(A)(1). Ultimately, however, the trial court found the victim's testimony and the prior civil judgment to be more persuasive in determining the amount of restitution. Generally speaking, "[e]valuating evidence and assessing its credibility are the primary functions of the trier of fact, not an appellate court." *Yuhasz v. Mrdenovich* (1992), 82 Ohio App.3d 490, 492, 612 N.E.2d 763. Throughout defense counsel's cross-examination, the victim stated several times that he could not be certain of where the monies came from to pay off his loan obligations. (Mar. 3, 2009 Tr. at 26-31). In fact, with many of these liabilities, the victim presumed that Shaffer, who was his wife at the time, was taking the money out of his savings account according to his instruction. (Id.). Furthermore, Shaffer failed to present evidence, aside from her cross-examination of the victim, contrary to the amount of restitution ordered by the trial court. As we recently noted, "* * * it is the responsibility of the parties to put forth the evidence they

believe is relevant and necessary for a just decision. Each party tries his own case, and the court reaches a decision based on the evidence that the parties have presented * * *." *Dindal v. Dindal*, 3d Dist. No. 5-09-06, 2009-Ohio-3528, ¶10, citing *Walls v. Walls* (May 4, 1995), 4th Dist. No. 94-CA-849, at *5. The trial court's restitution figure was based upon the evidence presented at the hearing—namely, the victim's testimony and the civil judgment entry—and, as such, we find no abuse of discretion.

**{¶18}** As to the dissent's contention that the restitution order was duplicitous or illogical given the civil judgment, we find this reason insufficient *on its face* to merit a reversal of the trial court's restitution order. Post at ¶24. Furthermore, "[n]o financial sanction imposed under this section [e.g. restitution] * * * shall preclude a victim from bringing a civil action against the offender." R.C. 2929.18(H). Since the victim is able to obtain a civil judgment based upon the same economic loss calculated in a trial court's restitution order, we fail to see how the opposite—obtaining a restitution order based upon a related civil judgment—is somehow impermissible. The dissent points to no rule of law providing otherwise.

**{¶19}** Next, Shaffer argues that the trial court erred by ordering her to pay costs and restitution without holding a hearing to determine if she had the present

or future ability to pay such costs. We again disagree. In *State v. Troglin*, this Court explained:

> **Under R.C. 2947.23, "[i]n all criminal cases, * * * the judge or magistrate shall include in the sentence the costs of prosecution and render a judgment against the defendant for such costs." R.C. 2947.23(A)(1). Thus, a court is required to impose the costs of prosecution against convicted criminal defendants, regardless of whether they are indigent. *State v. Felder*, 3d Dist. No. 9-04-51, 2005-Ohio-546, ¶6, citing *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, ¶ 8.**
>
> **Conversely, R.C. 2929.19(B)(6) requires a trial court to consider the offender's present and future ability to pay before imposing a financial sanction under R.C. 2929.18. The trial court is not required to hold a hearing on the issue of financial sanctions, and there are no express factors that the court must take into consideration or make on the record. See, e.g., *State v. Martin*, 140 Ohio App.3d 326, 338, 2000-Ohio-1942. "The record should, however, contain 'evidence that the trial court considered the offender's present and future ability to pay before imposing the sanction.'" *State v. Culver*, 160 Ohio App.3d 172, 186, 2005-Ohio-1359, citing *State v. Robinson*, 3d Dist. No. 5-04-12, 2004-Ohio-5346, at ¶17. Generally, R.C. 2929.19(B)(6) is satisfied where a trial court considered a PSI, which typically contains pertinent financial information, or where the transcript demonstrates that the trial court at least considered a defendant's ability to pay.**

3d Dist. No. 14-06-57, 2007-Ohio-4368, ¶¶37-38. With regard to costs, the trial court was required to impose costs regardless of Shaffer's indigent status. Id. With regard to Shaffer's ability to pay, the victim testified at the sentencing hearing that Shaffer was formerly employed as a manager of a McDonald's restaurant and earned around $10-11 per hour. (Mar. 3, 2009 Tr. at 22-23, 33).

Furthermore, the PSI, which was reviewed by the trial court, reveals that Shaffer worked at: McDonald's from 1995 to October 2007, earning $12/hour; I-Force from April 2008 to January 2009, earning $9/hour; and Scioto Industrial from November 2008 to January 2009. (Mar. 3, 2009 Tr. at 51-52); (PSI at 15). The PSI also provides information regarding Shaffer's educational background and finances. (PSI at 11, 15-16). Under these circumstances, we cannot conclude that the trial court abused its discretion by ordering Shaffer to pay costs and restitution. *Alvarez*, 2008-Ohio-5189, at ¶27, citing *Brewer*, 3d Dist. No. 2-97-20, at *3; *Horton*, 85 Ohio App.3d 268; *Myers*, 2006-Ohio-5958, at ¶12.

{¶20} Next Shaffer argues that the trial court erred by imposing indigent counsel fees without first determining whether she had a present or future ability to pay such fees. We agree. R.C. 2941.51(D) provides the following pertinent provision concerning indigent counsel fees: "* * * if the person represented has, or reasonably may be expected to have, the means to meet some part of the cost of the services rendered to the person, the person shall pay the county an amount that the person reasonably can be expected to pay." This Court has previously stated, however, that:

> **[A]n indigent defendant may properly be required to pay his attorney fees only after the court makes an affirmative determination on the record in the form of a journal entry, that the defendant has, or reasonably may be expected to have, the means to pay all or some part of the cost of the legal services rendered to him. The court must then enter a separate civil**

> **judgment for the attorney fees or any part thereof that the court finds the defendant has the ability to repay.**

*State v. Johnson*, 3d Dist. No. 16-03-09, 2004-Ohio-1513, ¶50, quoting *Galion v. Martin* (Dec. 12, 1991), 3d Dist. No. 3-91-06; *State v. Burns* (Mar. 15,1999), 3d Dist. No. 9-98-21, at *5-6; *State v. White* (Apr. 21, 1998), 3d Dist. Nos. 3-97-18, 3-97-19, at *6. The trial court sub judice failed to make an affirmative finding of Shaffer's present or future ability to pay indigent counsel fees in its journal entry of sentence; and therefore, the trial court erred in assessing indigent counsel fees. Accordingly, we must remand this matter for resentencing for the trial court to assess indigent counsel fees, if it determines those are still appropriate, in accordance with the procedures adopted by this Court in *Galion v. Martin* and its progeny.

{¶21} Shaffer's assignment of error is, therefore, sustained with regard to the trial court's imposition of indigent counsel fees and to that extent only.

{¶22} Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**SHAW, J., concurs.**

**/jnc**

**ROGERS, J., dissents.**

**{¶23}** I respectfully dissent from the opinion of the majority on the issue of restitution.

**{¶24}** I would first comment that I see no reason why this particular order was granted. It appears clear from the record that the trial court was granting restitution equal to and based on the previously granted civil judgment. If the civil judgment was based on the same fraudulent conduct which gave rise to the case at bar, which appears to be the State's argument, that civil judgment would not be dischargeable in bankruptcy. What benefit then is there to restating the judgment as an order of restitution, which is simply another civil judgment?

**{¶25}** But the greater problem is the fact that we do not know the basis for the award of damages in the civil judgment. R.C. 2929.18(A)(1) provides that the trial court may order restitution in an amount based on the victim's economic loss. There is insufficient evidence in this case to determine that the amount of the civil judgment is limited to the victim's economic loss.

**{¶26}** The majority comments that "[s]ince the victim is able to obtain a civil judgment based upon the same economic loss calculated in a trial court's restitution order, we fail to see how the opposite – obtaining a restitution order based upon a related civil judgment – is somehow impermissible." To me the distinction is obvious. A civil suit initiated after a criminal order of restitution

may include more than economic loss and may include additional economic losses not recognized in the order of restitution. Also, the order of restitution may be considered as a setoff against the victim's total damages so that the same damages are not awarded twice.

{¶27} When an order of restitution is requested subsequent to a civil award of damages, is the defendant permitted to raise the same defenses as in a civil action? If new or additional economic losses are requested, is the defendant permitted to argue that, since the new claims were not included in the civil case, they were waived? Would the issue of damages be res judicata?

{¶28} In this case, the State requested an order of restitution equal to the civil judgment, thereby simply duplicating the award. This is an obvious abuse of process and waste of judicial resources. When execution of these judgments is attempted, more judicial resources will be wasted on the efforts to enforce and/or defend two judgments based on the same injuries.

{¶29} Because of the question of whether the civil judgment is limited to the victim's economic loss, and because there is no logical reason for restating the civil judgment as an order of restitution, I would sustain the assignment of error as to the order of restitution.