OPINION
{¶ 1} This appeal is taken from a final judgment of the Trumbull County Court of Common Pleas convicting appellant, Robert Gibson, of one count of corruption of a minor and five counts of sexual battery. For the reasons that follow, the judgment of the trial court is affirmed in part and reversed in part, and the matter is remanded for further proceedings consistent with this opinion.
 {¶ 2} On March 7, 2001, the Trumbull County Grand Jury indicted appellant on the following charges: (1) two counts of rape, in violation of R.C. 2907.02(A)(1)(b); (2) two counts of corruption of a minor, in violation of R.C. 2907.04(A) and (B); and (3) ten counts of sexual battery, in violation of R.C. 2907.03(A)(5).[1] Appellant entered a plea of not guilty and retained counsel to represent him.
 {¶ 3} On March 28, 2001, appellant filed a motion requesting a bill of particulars, which the state provided on May 10, 2001. On June 13, 2001, appellant filed a motion asking the trial court to extend the time for filing pretrial motions until the parties completed discovery. On November 16, 2001, appellant filed a motion to compel discovery, two motions to suppress, and a motion to produce grand jury testimony. On December 13, 2001, appellant filed a motion to continue the December 17, 2001 trial date.
 {¶ 4} The matter finally proceeded to a jury trial beginning on February 11, 2002. At the conclusion of the state's case-in-chief, the trial court dismissed, upon appellant's motion, one count of sexual battery. After considering the evidence, the jury was unable to reach a verdict on both counts of rape, one count of corruption of a minor, and five of the ten counts of sexual battery. The jury, however, found appellant guilty of one count of corruption of a minor and the remaining five counts of sexual battery. The trial court accepted the jury's verdicts, entered an acquittal with respect to the seven counts upon which the jury was unable to reach a verdict, and then sentenced appellant to a two-year prison term for corruption of a minor, which was to be served consecutive to the concurrent four-year terms of incarceration imposed by the court for each of the five counts of sexual battery.
 {¶ 5} From this judgment, appellant filed a timely notice of appeal with this court. He now submits the following assignments of error for our consideration:
 {¶ 6} "[1.] The trial court erred in denying appellant's motion to dismiss for failure of the state to bring him to trial within the statutory time limit.
 {¶ 7} "[2.] Appellant's convictions under counts six, seven, and eight were based on insufficient evidence as a matter of law.
 {¶ 8} "[3.] The trial court erred in denying appellant's motion to dismiss count four as there was a material and prejudicial variance in the proof from the allegations in the bill of particulars.
 {¶ 9} "[4.] The trial court erred in denying admission of polygraph test results.
 {¶ 10} "[5.] Appellant's convictions were against the manifest weight of the manifest.
 {¶ 11} "[6.] The trial court erred in imposing more than the minimum prison terms and in ordering consecutive sentences without making the required findings on the record."
 {¶ 12} Under his first assignment of error, appellant argues that the trial court erred in overruling his motion to dismiss because the state failed to bring him to trial within the statutorily prescribed time limit in R.C. 2945.71. We disagree.
 {¶ 13} R.C. 2945.71(C)(2) provides that a person charged with a felony must be brought to trial within 270 days after his arrest. In the case at bar, appellant was arrested on February 11, 2001. Therefore, because the day of arrest does not count against the state for purposes of determining whether a criminal defendant's right to a speedy trial has been violated, State v. Pierson, 149 Ohio App.3d 318, 2002-Ohio-4515, at ¶ 14, the state had until November 9, 2001, to bring appellant to trial.[2]
 {¶ 14} However, R.C. 2945.72 sets forth an exclusive list of exceptions that toll the time within which the accused must be tried. It states:
 {¶ 15} "The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:
 {¶ 16} "***
 {¶ 17} "(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;
 {¶ 18} "***
 {¶ 19} "(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion[.]"
 {¶ 20} Having carefully reviewed the record, this court concludes that the trial court did not err in overruling appellant's motion to dismiss. On March 23, 2001, appellant filed a request for a bill of particulars. The state responded to this request on May 10, 2001. Appellant, nevertheless, argues that the filing of this motion should not "toll speedy trial time, because it [did] not require any action by the trial court or otherwise delay the proceedings in any manner[.]"
 {¶ 21} In State v. Brown, 98 Ohio St.3d 121, 2002-Ohio-7040, syllabus, the Supreme Court of Ohio held that "[a] demand for discovery or a bill of particulars is a tolling event pursuant to R.C. 2945.72(E)." According to the Court, "[d]iscovery requests by a defendant divert the attention of prosecutors from preparing their case for trial, thus necessitating a delay." Brown at ¶ 23. Moreover, if tolling were not permitted, defendants could file discovery requests in an effort to induce a speedy-trial violation, or "prosecutors could be forced to make hurried responses to discovery requests to avoid violating the speedy-trial statute." Id.
 {¶ 22} That being said, any delay in complying with a request for a bill of particulars must be reasonable. See, e.g., State v. Ritter
(Dec. 17, 1999), 11th Dist. No. 98-A-0065, 1999 WL 1313648, at 4 (holding that "the tolling period embodied by R.C. 2945.72(E) is subject to a requirement of reasonableness."). When determining whether a delay was reasonable, a court should consider all relevant factors before it, including "the nature of the motion itself, whether other motions were pending during the same period, and the presence of any extenuating circumstances which made the ruling upon the motion extremely difficult." Ritter at 4.
 {¶ 23} Appellant was charged with fourteen different crimes involving the sexual abuse of his teenage stepdaughter. This alleged abuse occurred from October 1994 until June 2000. Therefore, due to the nature of the criminal conduct and the length of time between the first incident and appellant's indictment, the delay in providing appellant with a bill of particulars was neither unnecessary nor unreasonable under the circumstances. As a result, the time in which the state was required to bring appellant to trial was extended forty-three days, or from November 8, 2001, to December 21, 2001.
 {¶ 24} On December 13, 2001, however, appellant filed a motion to continue his December 17, 2001 trial date. On the day the trial was scheduled to begin, appellant then executed a waiver of his right to a speedy trial for fifty-seven days. This resulted in a new speedy-trial date of February 11, 2001, the date appellant's trial actually began. Having executed this waiver, appellant cannot now complain that the state failed to prosecute him in a timely manner in accordance with R.C. 2945.71
and 2945.72.
 {¶ 25} In their appellate briefs, both appellant and the state raise other issues concerning the calculation of when appellant had to be brought to trial. There is no need to discuss these issues as our analysis with respect to appellant's request for a bill of particulars and his eventual waiver render them moot. That being said, appellant filed two motions to suppress on November 16, 2001, which the trial court eventually denied on November 30, 2001. A motion to suppress evidence tolls the time in which a defendant must be brought to trial. State v.Burdick (May 26, 2000), 11th Dist. No. 98-G-2209, 2000 WL 6888729, at 7. Nevertheless, given that time already was tolled from November 8 2001, to December 21, 2001, appellant's motion to suppress does not alter our calculations. Appellant's first assignment of error is not well-taken.
 {¶ 26} In his second assignment of error, appellant maintains that the state failed to provide sufficient evidence to convict him of sexual battery. Specifically, he argues that the state did not present any evidence that the Trumbull County Fair, the place where the victim claimed appellant sexually assaulted her on three different occasions, was held in Trumbull County during the time the state alleged the acts occurred.
 {¶ 27} When prosecuting an individual, the state must prove venue unless the defendant waives it. State v. Williams, 11th Dist. No. 2001-A-0044, 2002-Ohio-6919, at ¶ 17. Venue, however, is not a material element of a criminal offense, and the state need not "prove venue in express terms so long as it is established by all of the facts and circumstances in the case." Id.
 {¶ 28} A defendant waives the state's requirement to prove venue if he "does not properly object by the conclusion of the trial to the state's failure to prove venue." Id. Accordingly, a defendant cannot assert that the state failed to establish venue for the first time on appeal. Id. See, also, Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 WL 286594, at 4.
 {¶ 29} In the case at bar, appellant never objected to the state's failure to prove venue. Even if he had, the state presented sufficient evidence regarding this issue. The victim testified that appellant had vaginal intercourse with her during the 1997, 1998, and 1999 Trumbull County Fairs. There was also evidence in the record that the fairs occurred in Bazetta Township and Cortland, Ohio, both of which are entirely contained in Trumbull County. As a result, there was adequate evidence to establish venue.
 {¶ 30} Appellant also argues that with respect to counts six and seven of the indictment there was no evidence of penetration. He claims that although the prosecutor asked the victim if appellant had penetrated her, she never actually answered the question.
 {¶ 31} To convict appellant of sexual battery, the state was required to prove that he engaged in sexual conduct with another, not his spouse, and that he was the other person's adoptive parent or stepparent. R.C. 2907.03(A)(5). Sexual conduct includes, among other things, vaginal intercourse between a male and female. R.C. 2907.01(A).
 {¶ 32} Although the victim never expressly testified that appellant "penetrated" her, she did specifically testify that she and appellant engaged in vaginal intercourse at the times in question. This testimony is more than sufficient to establish the elements of sexual battery. Appellant's second assignment of error has no merit.
 {¶ 33} Appellant contends in his third assignment of error that the trial court erred in failing to dismiss count four in the indictment, corruption of a minor, because there was a material variance between the bill of particulars and the testimony at trial. He argues that because the victim testified that the alleged intercourse underlying the charge occurred on November 6, 2001, rather than November 5 as claimed in the bill of particulars, he was prevented from fairly defending himself on this particular charge.
 {¶ 34} "`In a criminal charge the exact date and time are immaterial unless in the nature of the offense exactness of time is essential. It is sufficient to prove the alleged offense at or about the time charged.'" State v. Sellards (1985), 17 Ohio St.3d 169, 171, quotingTesca v. State (1923), 108 Ohio St. 287, paragraph one of the syllabus. Stated differently, precise times and dates generally are not essential elements of an offense, and the failure to establish them, standing alone, would not provide a basis for dismissal. Sellards at 171.
 {¶ 35} The bill of particulars alleged that "on or about November 5, 1995," appellant took the victim into a bedroom and engaged in vaginal intercourse with her. At trial, however, the victim testified that the date of the incident was November 6. Appellant and his wife countered by testifying that appellant could not have had vaginal intercourse with the victim on the day alleged in the bill of particulars because he was never alone with her on November 5 as he was cooking a family dinner for his son's birthday.
 {¶ 36} Simply because the victim may have been confused as to a date does not mean that the incident never happened. The jury was aware of the discrepancy between the bill of particulars and the victim's testimony. Moreover, even though appellant may have believed he had an alibi for November 5, the jury was free to assess his credibility against that of the victim. Here, the victim contradicted the substance of appellant's alibi when she testified that appellant could not have cooked a birthday dinner for her brother on November 5 as he was living in North Carolina at the time, and was not even in the state.
 {¶ 37} This is not a situation where appellant was indisputably somewhere else during the time in question set out in the bill of particulars or that he was otherwise unable to have committed the crime. Accordingly, this court concludes that the difference was not "a material detriment to the preparation of [appellant's] defense." Sellards at 172. Appellant's third assignment of error is without merit.
 {¶ 38} Under his fourth assignment of error, appellant argues that the trial court erred when it denied his request to introduce the results of his private polygraph examination into evidence. Although the results of a polygraph examination normally are not admitted into evidence, appellant claims that the state "opened the door to the issue in its cross-examination of [him,]" and the trial court's refusal to admit the test results "more than likely left the jury with the impression that [he] had failed the test, and [that] the results were being kept from the jury in order to protect [him]." We disagree.
 {¶ 39} As a general proposition, the results of a polygraph examination are not admissible to establish the guilt or innocence of a defendant in a criminal trial. In State v. Souel (1978), 53 Ohio St.2d 123, syllabus, however, the Supreme Court of Ohio held that results may be admissible under limited circumstances:
 {¶ 40} "The results of a polygraphic examination are admissible in evidence in a criminal trial for purposes of corroboration or impeachment, provided that the following conditions are observed:
 {¶ 41} "(1) The prosecuting attorney, defendant and his counsel must sign a written stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graphs and the examiner's opinion thereon on behalf of either defendant or the state.
 {¶ 42} "(2) Notwithstanding the stipulation, the admissibility of the test results is subject to the discretion of the trial judge, and if the trial judge is not convinced that the examiner is qualified or that the test was conducted under proper conditions he may refuse to accept such evidence.
 {¶ 43} "(3) If the graphs and examiner's opinion are offered in evidence the opposing party shall have the right to cross-examine the examiner respecting:
 {¶ 44} "(a) the examiner's qualifications and training;
 {¶ 45} "(b) the conditions under which the test was administered;
 {¶ 46} "(c) the limitations of and possibilities for error in the technique of polygraphic interrogation; and,
 {¶ 47} "(d) at the discretion of the trial judge, any other matter deemed pertinent to the inquiry.
 {¶ 48} "(4) If such evidence is admitted the trial judge should instruct the jury to the effect that the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged, and that it is for the jurors to determine what weight and effect such testimony should be given."
 {¶ 49} Appellant contends that the state "opened the door" to polygraph testimony when it cross-examined him. The parties, however, never signed a written stipulation providing for appellant's submission to the test and for admission of the results at trial. Id. Furthermore, a review of the testimony shows that appellant's accusation is not true. During cross-examination, the following exchange occurred between appellant and the prosecutor:
 {¶ 50} "Q. [The prosecutor] And your testimony here today was as truthful as your history to Dr. Soroboro; would that be fair to say?
 {¶ 51} "A. [Appellant] I really don't think my history to Dr. Soroboro is any of your business. But yes.
 {¶ 52} "Q. You told him you felt vindicated?
 {¶ 53} "A. I felt vindicated after I took a lie detector.
 {¶ 54} "Q. You did?
 {¶ 55} "A. Yes."
 {¶ 56} With this record, it can hardly be argued that the state "forced" appellant into revealing the existence of the polygraph examination. More importantly, as we just noted, the parties never stipulated to any examination's admissibility, and there is no way of determining such key issues as the identity of the examiner, the questions posed to appellant, and the testing conditions, just to name a few. Absent a stipulation, the results of a polygraph examination, favorable or unfavorable, are not admissible. As a result, the trial court did not err in refusing to admit appellant's results. Appellant's fourth assignment of error has no merit.
 {¶ 57} In assignment of error five, appellant contends that his convictions were against the manifest weight of the evidence. He argues that, absent any corroborating physical evidence implicating him, the case becomes one primarily based on the credibility of the witnesses, and that there are serious doubts as to the victim's credibility in this case.
 {¶ 58} In particular, appellant claims that the victim never showed any outward signs of physical, psychological, or emotional stress, that she never told anyone about the alleged abuse, and that there was testimony from family members that the victim and appellant appeared to have a good relationship. Taken in connection with appellant's character, his medical infirmities, and the absence of a prior criminal record, appellant argues that the jury lost its way and created a manifest miscarriage of justice when it found him guilty.
 {¶ 59} When reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. Statev. Martin (1983), 20 Ohio App.3d 172, 175. See, also, State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 60} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus.
 {¶ 61} When assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." State v. Awan (1986), 22 Ohio St.3d 120,123. "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." Simpson at 3. If the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. Id.
 {¶ 62} In the case at bar, the jury was clearly in the best position to view the witnesses and determine their credibility. Obviously, the jury ultimately believed that the victim was more credible than appellant. And despite the fact that much of the weight of the testimony presented rested on the credibility of the witnesses, there is nothing to suggest that the victim's testimony was incredible or absurd. Accordingly, this court will not disturb those findings on appeal as the credibility of each witness was a critical issue for the trier of fact to determine. State v. Ready (2001), 143 Ohio App.3d 748.
 {¶ 63} Moreover, the state introduced other evidence that supports the jury's verdict. After the victim moved from the family home, appellant sent her numerous cards and letters expressing what could easily be described as a romantic love and asking her to move back home. Appellant also sent the victim flowers in an effort to upset her live-in boyfriend, and repeatedly called her home and place of employment. In fact, the calls became so disruptive that the victim's employer eventually filed a complaint with the Niles Police Department.
 {¶ 64} On one occasion, the police, with the victim's assistance, recorded a conversation between her and appellant. During this conversation, the victim informed appellant that she had to undergo a gynecological examination for her health insurance. The victim told appellant that she was concerned the exam would reveal their relationship. Appellant, however, stated:
 {¶ 65} "No, no, no. God no. And I don't know why you're worried about us, you've been with Mike. They can't find out anything. *** Even Nicky comes home and tells us you're sleeping together. He knows. So why worry about me?"
 {¶ 66} While this evidence may not conclusively prove appellant's guilt, it does suggest the existence of, at best, an unhealthy stepfather/stepdaughter relationship. Appellant's fifth assignment of error is not well taken.
 {¶ 67} In his sixth assignment of error, appellant claims that the trial court erred by sentencing him to more than the minimum sentence because the court never made the statutorily mandated findings as required by R.C. 2929.14(B). Appellant also maintains that the trial court erred when it sentenced him to serve consecutive sentences without making the required findings on the record.
 {¶ 68} Under R.C. 2953.08, our review of a felony sentence is de novo. State v. Raphael (Mar. 24, 2000), 11th Dist. No. 98-L-262, 2000 WL 306776, at 2. However, this court will not disturb appellant's sentence unless we find, by clear and convincing evidence, that the record does not support the sentence or that the sentence is otherwise contrary to law. State v. Thomas (July 16, 1999), 11th Dist. No. 98-L-074, 1999 WL 535272, at 4, quoting State v. Rose (Sept. 15, 1997), 12th Dist. No. CA96-11-106, 1997 Ohio App. LEXIS 4161, at 5. Clear and convincing evidence is that evidence which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Thomas at 4.
 {¶ 69} R.C. 2929.14(B) directs the sentencing court to impose the minimum sentence for first-time imprisonment unless it specifies on the record that the shortest prison term would demean the seriousness of the conduct or would not adequately protect the public from future crime by the offender. State v. Bradford (June 1, 2001), 11th Dist. No. 2000-L-103, 2001 Ohio App. LEXIS 2487, at 6. However, in interpreting this requirement, the Supreme Court of Ohio has held:
 {¶ 70} "R.C. 2929.14(B) does not require that the trial court give its reasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence." (Emphasis sic.) State v. Edmonson,86 Ohio St.3d 324, 1999-Ohio-110, syllabus.
 {¶ 71} According to Edmonson, a trial court is not required to give its reasons underlying its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crime before the court can lawfully impose more than the minimum authorized sentence. Bradford at 7. Rather, when sentencing a person to first-time imprisonment, the trial court merely has to state somewhere on the record that one or both of the reasons set forth in R.C. 2929.14(B) justify a sentence which is longer than the minimum. Bradford at 7-8. In other words, the trial court "must note that it engaged in the analysis and that it varied from the minimum for at least one of the two sanctioned reasons." Edmonson at 326.
 {¶ 72} When imposing consecutive sentences, the trial court must first determine that consecutive sentences are "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[.]" R.C.2929.14(E)(4). Next, the trial court must find that one of the following factors listed in R.C. 2929.14(E)(4) is also present: (a) that the offender was awaiting trial or sentencing or was under community control sanctions; (b) that the harm caused by the offenses was so great that a single prison term would not adequately reflect the severity of the conduct; or (c) that the offender's prior criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime. State v. Norwood (June 8, 2001), 11th Dist. No. 2000-L-072, 2001 WL 635951, at 4.
 {¶ 73} The court must also follow the requirements set forth in R.C. 2929.19(B) when sentencing an offender to consecutive sentences under R.C. 2929.14. State v. Hoskins (Mar. 16, 2001), 11th Dist. No. 2000-A-0037, 2001 Ohio App. LEXIS 1232. Specifically, R.C. 2929.19(B)(2)(c) requires that the trial court justify its imposition of consecutive sentences by making findings that gives the court's reasons for selecting that particular sentence.
 {¶ 74} In the past, this court has held that the findings mandated by R.C. 2929.14 "must appear somewhere on the record of sentence, either in the judgment or in the transcript of the sentencing hearing." (Emphasis added.) State v. Rone (Dec. 4, 1998), 11th Dist. No. 98-A-0001, 1998 Ohio App. LEXIS 5813, at 6. See, also, Hoskins, supra. Recently, however, the Supreme Court of Ohio held that when imposing a nonminimum sentence or when ordering a defendant to serve consecutive sentences, the trial court must make its statutorily required findings at the sentencing hearing. State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165, paragraphs one and two of the syllabus.
 {¶ 75} Here, the trial court failed to make any findings under R.C. 2929.14(B) and 2929.14(E)(4). Nowhere in the record is there any indication as to why the trial court believed more than the minimum prison term was necessary or why consecutive sentences were appropriate in this case. Because the trial court failed to properly put forth its reasons for the given sentences on the record at the sentencing hearing as required, appellant's sixth assignment of error has merit.
 {¶ 76} Pursuant to the foregoing analysis, appellant's first, second, third, fourth, and fifth assignments of error have no merit, while his sixth assignment of error is well-taken. Therefore, the judgment of the trial court is affirmed in part and reversed in part, appellant's sentence is vacated, and the matter is remanded for resentencing.
DONALD R. FORD, P.J., and DIANE V. GRENDELL, J., concur.
[1] All fourteen charges involved appellant's stepdaughter, who was twelve years old when the abuse began and eighteen years old when it finally ended.
[2] We note that the record does not reflect how many days appellant was in jail before posting bond. This fact can sometimes be important as R.C. 2945.71(E) states that "[f]or purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." However, as our calculations will show, any time appellant spent in jail would not alter our analysis.