DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, wherein a jury convicted appellant, Deandre Gaston, of complicity to commit felonious assault with a firearm specification, in violation of R.C. 2903.11(A)(1) and 2941.145, and complicity to commit aggravated robbery with a *Page 2 
firearm specification, in violation of R.C. 2911.01(A)(1) and2941.145.[1] Appellant was sentenced on May 8, 2006, to eight years imprisonment as to the felonious assault and five years as to the aggravated robbery, to be served consecutively. Appellant was also sentenced to the mandatory three years of incarceration for each firearm specification, to be served concurrently with each other, but consecutively to the other counts, for a total of 16 years in prison. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On appeal, appellant sets forth the following assignments of error:
 {¶ 3} "Assignment of Error I: Gaston's sentence was unconstitutional because the trial court made findings of fact in order to support a sentence that was consecutive and not the shortest available. And, it was not supported by clear and convincing evidence. And the sentence violated the Ex Post Facto Clause of the U.S. Constitution.
 {¶ 4} "Assignment of Error II: The verdict was against the manifest weight of the evidence due to the highly intoxicated state of the witnesses and other irregularities.
 {¶ 5} "Assignment of Error III: Gaston's trial counsel provided ineffective assistance of counsel by failing to fail [sic] a suppression motion, seek expert testimony and other errors which were highly prejudicial.
 {¶ 6} "Assignment of Error IV: The trial court erred by failing to grant Gaston's motion to suppress a statement he made at the time of his arrest. *Page 3 
 {¶ 7} "Assignment of Error V: The trial court erred and abused its discretion by rulings it made during the trial."
 {¶ 8} Appellant's convictions arose as a result of a robbery and shooting which took place on August 19, 2005, at the Dog House Bar and Grill, in Toledo, Ohio. The following relevant evidence was adduced at trial.
 {¶ 9} At approximately one or two o'clock in the morning, prior to closing, appellant walked into the bar with an acquaintance, David Meeker. At the time that appellant and Meeker entered the bar, only a small group of patrons and the bartender, Dolly Bonconski, were present. The patrons were Douglas DeVaughn, Gerald Stein, Wanda Johnson, and Michelle Baumia.
 {¶ 10} According to the witnesses, appellant played pool for a few minutes with Meeker; Bonconski served Meeker a beer and appellant a cola, due to his being under the age of 21; and appellant struck up a conversation with some of the other customers, including Johnson. Then, appellant abruptly exited the bar with Meeker. After approximately five minutes, appellant and Meeker returned to the bar, brandishing handguns, announcing that they were conducting a robbery. Witnesses testified that Meeker took the lead in the robbery, and he forced Bonconski toward the cash register to retrieve the cash. Witnesses also described Meeker as the assailant who screamed for everybody to get on the ground, and who pointed his gun in the faces of the bar patrons. Witnesses testified that, during this time, appellant quietly stood blocking the exit with a gun. *Page 4 
 {¶ 11} Although there was conflicting testimony as to certain details, all of the witnesses essentially testified to the following. Johnson got up from the ground and hurried toward the exit. A struggle ensued between her and appellant, resulting in appellant shooting several rounds from his gun. Johnson was shot at least three times in her arm, chest, and neck, causing severe injuries. She fell to the ground and lay in a pool of her own blood as appellant and Meeker exited the building, warning the remaining people not to follow, or risk being shot themselves.
 {¶ 12} When appellant and Meeker left, the bar patrons and bartender immediately locked the door and called the police. As police arrived, investigators collected evidence and took witness statements. One of the drinking glasses collected contained a partial fingerprint that was later identified at trial as belonging to appellant. Emergency medical crews took Johnson to a nearby hospital for treatment. She eventually recovered and was released, but one of the bullets remains lodged in her chest cavity.
 {¶ 13} Detective Bart Beavers of the Toledo Police Department arrived at the scene. All of the witnesses gave descriptions of the perpetrators. It was apparent to Beavers that all of the witnesses had been consuming alcoholic beverages and were intoxicated. Based on his professional opinion, Beavers determined that Baumia was the least intoxicated and chose to give her a photo array. Baumia positively identified appellant from the photo array as one of the perpetrators of the robbery and as the individual who shot Johnson. *Page 5 
 {¶ 14} Appellant was arrested based upon his fingerprint being on the glass found at the bar that night, witness descriptions, and the photo array identification by Baumia. Beavers interviewed appellant on the evening of August 23, 2005. After being given his Miranda warnings, appellant signed a waiver of rights form and spoke with the detective. Initially, appellant denied even being at the Dog House Bar; however, upon confronting appellant with the evidence of his fingerprint and the witness identification, appellant eventually admitted that he robbed the bar and shot Johnson. The interrogation continued as officers attempted to ascertain who his accomplice was, but appellant refused to indicate who was with him. Finally, after appellant was interrogated by several officers, with several breaks in between sessions, the interrogation ended after approximately two hours.
 {¶ 15} Appellant's attorney pointed out several minor inconsistencies in some of the witnesses' testimony on cross-examination. For example, one witness pointed out that the gunshots went off in rapid succession while another witness testified that the gunshots occurred over the period of a minute. Also, appellant's trial counsel pointed out that a few witnesses had not actually seen appellant shoot the gun because they were looking directly at Meeker. Instead, those witnesses only heard gunshots. Appellant's attorney also made it a point to emphasize that all of the witnesses had consumed alcohol and all were intoxicated to varying degrees. In fact, appellant's attorney submitted hospital records which clearly indicated that Wanda Johnson was legally intoxicated. *Page 6 
 {¶ 16} Appellant argues in his first assignment of error that the trial court made a "plethora of factual findings" during sentencing which was unconstitutional under State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856. Appellant did not receive the minimum sentence available, and the court imposed consecutive sentences. Appellant contends this warrants reversal and remand for resentencing.
 {¶ 17} In Foster, the Ohio Supreme Court found that various sections of the Ohio Revised Code, including R.C. 2929.14(B)[2] and2929.14(E)(4)[3] were unconstitutional under Blakely v.Washington (2004), 542 U.S. 296. Foster, at ¶ 83. In sentencing appellant, the trial court made several factual findings in contravention of appellant's constitutional rights and, therefore, appellant's sentence is voidable pursuant to Blakely andFoster. State v. Payne, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 29. However, in Payne, the Supreme Court of Ohio held that "a lack of an objection in the trial court forfeits the Blakely issue for purposes of appeal when the sentencing occurred after the announcement ofBlakely." Id. at ¶ 31. Where an appellant has forfeited his right to raise a Foster/Blakely issue on appeal, an appellate court is confined to a plain error analysis. Id. at ¶ 23-24; State v. Baccus, 6th Dist. No. L-06-1310, 2007-Ohio-5991, ¶ 13. *Page 7 
 {¶ 18} Appellant failed to object to the constitutionality of his sentence even though his sentencing hearing occurred on May 4, 2006, almost two years after the Blakely decision was handed down. Pursuant toPayne, we find that appellant forfeited the Blakely issue on appeal. We further find that no plain error occurred in this case because appellant simply cannot establish that but for the Blakely error, he would have received a more lenient sentence. Payne at ¶ 25.
 {¶ 19} Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." In this case, appellant brings no plain errors to our attention, and we notice no defects which might affect any of his substantial rights. The Ohio Supreme Court held that even when remanding a defendant's sentence under Foster, nothing would prevent "the trial court from considering the same factors it previously had been required to consider and imposing the same sentence or even a more stringent one." Id. at ¶ 26. In this case, appellant's sentence was within the statutory parameters. The sentencing judge considered the record, oral statements during the hearing, the victim impact statement, and presentence investigation report, as well as the principles and purposes of sentencing under R.C. 2929.11, and balanced the seriousness and recidivism factors under R.C. 2929.12. Upon review of the record for plain error, we find that appellant was not prejudiced by the judicial findings, and that he has not demonstrated that, but for the judicial findings, he would have received a more lenient sentence. *Page 8 
 {¶ 20} Appellant also argues that his sentence was unduly harsh and not supported by the facts. Before the Foster decision, R.C. 2953.08
required appellate courts to review felony sentences de novo. State v.Gibson, 11th Dist. No. 2002-T-0055, 2003-Ohio-5695, ¶ 68. R.C. 2953.08
also required appellate courts not to disturb a sentence on appeal unless, by clear and convincing evidence, the courts found that the record did not support the sentence or the sentence was otherwise contrary to law. Id. In post-Foster sentencing appeals, "the clear and convincing evidence standard of review set forth under R.C.2953.08(G)(2) remains viable[.]" State v. Burton, 10th Dist. No. 06AP-690, 2007-Ohio-1941, ¶ 16, quoting State v. Ramos, 3d Dist. No. 4-06-24, 2007-Ohio-767, ¶ 23. We now perform the clear and convincing standard to whether the sentence was supported by the record or was otherwise contrary to law. Burton, at ¶ 19.
 {¶ 21} We find that appellant has not shown by clear and convincing evidence that appellant's sentence was contrary to law or unsupported by the record. As stated above, the trial court properly balanced the seriousness of appellant's crime and the likeliness of recidivism. The sentence was within the statutory parameters. "[T]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences."Foster at ¶ 100.
 {¶ 22} Appellant argues that his sentence was not supported by the record "especially when compared to [his co-defendant] Meeker's sentence." However, nothing in the record indicates what sentence Meeker actually received. In any event, appellant's *Page 9 
culpability in the crime bears no consideration when comparing his sentence with that of an allegedly more culpable co-defendant. SeeState v. Tewolde, 10th Dist. No. 06AP-764, 2007-Ohio-2218. We also note that "an individual has no substantive right to a particular sentence within the range authorized by statute." State v. Templeton, 5th Dist. No. 2006-CA-33, 2007-Ohio-1148, ¶ 98, citing Gardner v. Florida (1977),430 U.S. 349, 358. As noted by the court in Templeton, each defendant is different and a trial court is permitted to impose two different sentences upon individuals convicted of similar crimes. Id. at ¶ 103, citing State v. Aguirre, 4th Dist. No. 03CA5, 2003-Ohio-4909, ¶ 50. Here, appellant fails to cite any precedent or authority to substantiate the claim that his sentence is unsupported by the record because of his co-defendant's sentence.
 {¶ 23} We also find no merit in appellant's argument that his sentence violated the Ex Post Facto Clause of the United States Constitution. First, as this argument was not raised at sentencing, it is waived for purposes of appeal. See State v. Awan (1986), 22 Ohio St.3d 120, 123. Therefore, we may not properly consider it.
 {¶ 24} Even if he had not waived the argument, this court has repeatedly rejected it on prior occasions. See, e.g., State v.O'Neill, 6th Dist. No. WD-06-055, 2008-Ohio-818; State v. Coleman, 6th Dist. No. S-06-023, 2007-Ohio-448; State v. Friess, 6th Dist. No. L-05-1307, 2007-Ohio-2030. The sentencing range for appellant's conviction remained the same at the time of sentencing as it did at the time of the offense; thus, the Foster remedy neither judicially increased the sentencing range, nor did it retroactively apply a *Page 10 
new statutory maximum. Consequently, his sentence does not violate either appellant's right to due process or the prohibition against ex post facto laws.
 {¶ 25} Based on the record, we find that appellant's sentence was supported by the record and was not contrary to law. Appellant's first assignment of error is therefore found not well-taken.
 {¶ 26} In his second assignment of error, appellant states that his conviction was against the manifest weight of the evidence. In particular, appellant argues that based on the evidence adduced at trial, the following factors created reasonable doubt as to his guilt: (1) incomplete memory of some witnesses; (2) generic initial descriptions of the perpetrators by witnesses at the scene of the crime; (3) Meeker's more active involvement in the robbery, and (4) the witnesses' varying degrees of intoxication.
 {¶ 27} In determining whether a verdict is against the manifest weight of the evidence, this court sits as a "thirteenth juror." State v.Thompkins (1997), 78 Ohio St.3d 380, 387. Thus, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id. In resolving conflicts in the evidence, we must determine whether the finder of fact "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Moreover, this court must keep in mind that it is the trier of fact's duty to determine the credibility of a witness; *Page 11 
accordingly, our ability to consider credibility is limited. State v.Reynolds, 10th Dist. No. 3692, 2004-Ohio-3692, ¶ 13 (citation omitted).
 {¶ 28} In the case at hand and after a thorough review of the record, the weight of the evidence in favor of conviction was substantial. In addition to appellant's confession, every witness identified appellant at trial as the perpetrator of these crimes. A witness also identified appellant through a photo array just after the incident. There was even a partial fingerprint of appellant at the scene of the crime. Accordingly, we find that the jury did not clearly lose its way and create such a manifest miscarriage of justice that appellant's conviction should be reversed and a new trial ordered. Appellant's second assignment of error, therefore, is found not well-taken.
 {¶ 29} In his third assignment of error, appellant states that he was represented by ineffective trial counsel. Specifically, appellant argues that his trial counsel: (1) failed to challenge the witnesses' identifications of appellant; (2) did not call an expert witness to rebut the state's expert testimony regarding the partial fingerprint and to question the state witnesses' ability to recall events; (3) did not vigorously cross-examine the shooting victim; and (4) did not request a jury view.
 {¶ 30} To establish a claim of ineffective assistance of counsel, an appellant is required to demonstrate that his counsel's actions fell below an objective standard of reasonableness and that such action caused prejudice to appellant's case. Strickland v. Washington (1984),466 U.S. 668, 687-689; and State v. Lott (1990), 51 Ohio St.3d 160, 174. The objective standard of reasonableness is the prevailing professional norm. Id. at *Page 12 
688. Prejudice is proven by showing that there is a reasonable probability that, but for counsel's unprofessional errors, the proceeding's result would have been different. Id. at 694; State v.Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus; andState v. Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 108.
 {¶ 31} Because a court cannot second guess trial strategies and it has the benefit of hindsight, there is a strong presumption that appointed counsel acted in a reasonable and competent manner. State v. Mason
(1998), 82 Ohio St.3d 144, 157-158, quoting Strickland, supra at 689. Generally, when the action of the appointed counsel amounts to a trial tactic, it cannot later be used in a challenge that the trial counsel rendered ineffective assistance of counsel. State v. Longo (1982),4 Ohio App.3d 136, 139.
 {¶ 32} Regarding appellant's first claim that his trial counsel failed to challenge the witnesses' identifications of appellant, we find this claim is unsubstantiated. According to the record, appellant's trial counsel questioned witnesses and attempted to challenge their credibility on the basis of their levels of intoxication. The jury, however, is the sole judge of the weight of the evidence and the credibility of witnesses, and "may believe or disbelieve any witness or accept part of what a witness says and reject the rest." State v.Antill (1964), 176 Ohio St. 61, 67. Although defense counsel's attempt to undermine the witnesses' credibility was apparently unsuccessful in this case, we find that his representation was not deficient in this regard.
 {¶ 33} Appellant's second claim of ineffective assistance of counsel is that an expert should have been called by trial counsel to rebut the state's fingerprint testimony *Page 13 
and/or the witnesses' levels of intoxication. We have previously held that "the decision whether or not to call an expert witness is solely a matter of trial strategy." State v. Newberry, 6th Dist. No. H-01-020, 2002-Ohio-3972, ¶ 16. A failure by defense counsel to call a witness at trial does not constitute ineffective assistance of counsel absent a showing of specific prejudice. State v. Williams (1991),74 Ohio App.3d 686, 695; State v. Reese (1982), 8 Ohio App.3d 202, 203. Therefore, whether the expert would be used to rebut the state's expert testimony or to attack witness credibility, the decision to call that expert is a matter of trial strategy. Such a decision will not be second guessed without a specific showing of prejudice to the appellant. Because appellant offers no such showing, i.e. that the results of the trial would likely be different upon the calling of an expert, we find that appellant's trial counsel was not ineffective in this regard.
 {¶ 34} We further find that appellant's third and fourth claims of ineffective assistance of counsel, i.e. counsel's failure to vigorously cross-examine the shooting victim and request a jury view, were matters of trial strategy. There are no obvious deficiencies in counsel's cross-examination of the victim and a jury view was arguably unnecessary since photographs of the crime scene, and drawings laying out the relative positions of the people involved, were provided to the jury. The mere existence of an alternative theory of defense is insufficient to establish ineffective assistance of counsel. State v. Tenace, 6th Dist. No. L-05-1041, 2006-Ohio-1226, ¶ 26; State v. Combs (1994),100 Ohio App.3d 90, 103. *Page 14 
 {¶ 35} Accordingly, we find that appellant failed to establish that trial counsel's representation was deficient or that appellant was specifically prejudiced by the alleged deficiencies. Thus, given the strong presumption that appointed counsel acted in a reasonable and competent manner, we find appellant's third assignment of error not well-taken.
 {¶ 36} In his fourth assignment of error, appellant states that the trial court improperly denied his motion to suppress evidence concerning his statements to police. He contends that his confession was coerced by police officers and obtained in violation of his constitutional rights. We disagree.
 {¶ 37} It is established law that, to protect against self-incrimination, a suspect in police custody must be givenMiranda warnings prior to any police questioning. Miranda v.Arizona (1966), 384 U.S. 436, 479. Under the exclusionary rule, failure to give Miranda warnings can result in the suppression of the suspect's answers to questioning. See id.; Michigan v. Tucker (1974),417 U.S. 433, 445.
 {¶ 38} Certainly, though, one may waive or relinquish a known right. In Moran v. Burbine (1986), 475 U.S. 412, the United States Supreme Court explained the two aspects of a valid waiver of the privilege against self-incrimination. First, the waiver must be voluntary "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Id. at 421. Second, the waiver must be "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Id. *Page 15 
 {¶ 39} If a suspect does validly waive his or her rights, the trial court still has the task of determining whether post-waiver statements were made voluntarily. This should be done by looking to the totality of the circumstances surrounding the statements. In doing so, the court should look to the "age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment, and the existence of threat or inducement." State v. Brewer (1990), 48 Ohio St.3d 50, 58, quoting State v. Edwards (1976), 49 Ohio St.2d 31, paragraph two of the syllabus.
 {¶ 40} Under the totality of the circumstances, appellant validly waived his right to remain silent. Appellant was and is a literate, sophisticated individual. He was not under the influence of drugs or alcohol. No threats or inducements were made. He was warned of his rights and the consequences of his option as to whether to speak to the police or not. He then signed a written waiver of rights. We find that appellant's waiver was voluntary and made with full awareness of his rights and the consequences of his decision to speak with the police.
 {¶ 41} In addition, the record supports the trial court's conclusion that appellant's post-waiver confession was made voluntarily. Appellant, at the time of his arrest and questioning, was a 19 year-old college student whose mentality is not in issue. He also had a prior criminal history, which suggests he knew what he was doing. His interrogation lasted barely two hours, during which he was given several breaks in the *Page 16 
interrogation when the questioning officers left the room. There is no evidence of physical deprivation, mistreatment, threat or inducement.
 {¶ 42} The intensity of interrogation is another relevant factor in whether appellant made a voluntary confession. Here, one officer did calmly call appellant expletive-ridden names[4] during questioning in response to appellant's initial denials. However, this was mild compared to other non-coercive police tactics. See, e.g., State v. Slaughter
(Apr. 28, 2000), 1st Dist. No. C-980702 (holding that extended combative interrogation where police officers cursed at and threatened a suspect that his "ass would burn" in the courtroom and in hell did not rise to the level of coercion). A suspect's decision to confess is made voluntarily absent evidence that "his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." Colorado v. Spring (1987), 479 U.S. 564, 574
(internal quotations omitted). Given the sequence of events and all other circumstances, the evidence clearly demonstrates that these relatively minor police statements did not overbear appellant's will or critically impair his capacity for self-determination. Appellant's fourth assignment of error is found not well-taken.
 {¶ 43} In his fifth assignment of error, appellant states that the trial court abused its discretion in making various evidentiary rulings. Specifically, appellant asserts that the trial court abused its discretion when it allowed the jury to ask questions of witnesses and *Page 17 
overruled defense counsel's objections to certain questions which were arguably already asked and answered.
 {¶ 44} In State v. Fisher, 99 Ohio St.3d 127, 2003-Ohio-2761, the Ohio Supreme Court put the inquiry of allowing jurors to question witnesses to rest. Like other evidentiary matters, the practice of allowing jurors to question witnesses is a matter committed to the broad discretion of the trial court. Id. at ¶ 29. However, to minimize any danger of prejudice, courts that allow juror questions should "(1) require jurors to submit their questions to the court in writing, (2) ensure that jurors do not display or discuss a question with other jurors until the court reads the question to the witness, (3) provide counsel an opportunity to object to each question at sidebar or outside the presence of the jury, * * * (4) instruct jurors that they should not draw adverse inferences from the court's refusal to allow certain questions, and (5) allow counsel to ask followup questions of the witnesses." Id.
 {¶ 45} In this case, the trial court followed all of the recommended procedures of the Ohio Supreme Court in permitting juror questions of witnesses. In addition, appellant offers no evidence to support his contention that he was prejudiced. On the contrary, given the abundance of evidence, it appears that clarifying the evidence in the minds of the jurors helped, rather than hindered, appellant. Accordingly, we find that appellant has failed to establish that the trial court abused its discretion in allowing the jury to question witnesses. *Page 18 
 {¶ 46} The admission of evidence also lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion which created material prejudice. State v. Gross (2002), 97 Ohio St.3d 121,2002-Ohio-5524, ¶ 43. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 47} Appellant offers no evidence that the decisions of the trial court to overrule defense's objections were unreasonable, arbitrary, or unconscionable. In addition, we find that no prejudice resulted from the trial court overruling defense objections to questions asked and answered. Appellant's fifth assignment of error is found not well-taken.
 {¶ 48} The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4. *Page 19 
Peter M. Handwork, J., Arlene Singer, J., William J. Skow, J., CONCUR.
[1] The jury acquitted appellant of the remaining count in the indictment, complicity to commit attempted murder.
[2] This section of the Ohio sentencing statute presumes a minimum sentence for criminal defendants unless judicial fact finding occurs to justify the nonminimum sentence.
[3] This section of the Ohio sentencing statute mandates that judicial fact finding must occur prior to imposing consecutive sentences.
[4] After confronting appellant with the evidence that implicated him with the crime and appellant's repeated denials, one officer calmly told appellant "you're fucking stupid if you don't tell us you were involved with this." *Page 1