OPINION
{¶ 1} Defendant-appellant, Tavares Tyson (hereinafter "Tyson"), appeals the judgment of the Allen County Court of Common Pleas, finding him guilty of one count of Aggravated Robbery with a firearm specification, in violation of R.C. 2911.01(A)(1), a felony of the first degree, and one count of Burglary with a firearm specification, in violation of R.C. 2911.12(A)(1), a felony of the second degree. As a result of these convictions, Tyson was sentenced to a seventeen year prison term.
 {¶ 2} On July 30, 2003, around midnight, Tyson appeared at the home of John Ferris in Lima, Ohio. At the time, Ferris was at home with three friends. Tyson knocked on the door and asked Ferris if he had a car for sale. Ferris replied that he did not and Tyson left Ferris's residence.
 {¶ 3} Approximately twenty minutes later, there was another knock at the door. One of Ferris's friends opened the door and four men, armed with guns, entered the residence and demanded money. Ferris told the men he had some money upstairs and he was taken at gunpoint by two of the intruders to retrieve the money from his bedroom. Ferris was robbed of approximately one thousand dollars and was struck in the face with a gun by one of the men. After the intruders left Ferris's residence, Ferris called the police. Upon questioning by the police, Ferris and one of his friends identified Tyson as one of the intruders.
 {¶ 4} On September 11, 2003, Tyson was indicted on one count of Aggravated Robbery, a felony of the first degree in violation of R.C.2911.01(A)(1) with a firearm specification pursuant to R.C. 2941.145. On March 11, 2004, the grand jury returned an additional indictment, charging Tyson with one count of Burglary, a felony of the second degree in violation of R.C. 2911.12(A)(1) with a firearm specification pursuant to R.C. 2941.145. The trial court subsequently joined the cases for purposes of trial.
 {¶ 5} A jury trial commenced and, on April 1, 2004, the jury returned verdicts of guilty to both counts and specifications. On May 10, 2004, Tyson was sentenced to a seventeen year term of imprisonment.
 {¶ 6} It is from this decision that Tyson now appeals, setting forth two assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I The jury verdict was against the manifest weight of the evidence.
 {¶ 7} At trial, Tyson's defense was that he did not go to Ferris's residence on July 30, 2003, was not involved in the robbery and, in fact, was at another location at the time of the robbery. In this assignment of error, Tyson claims that the jury verdict was against the manifest weight of the evidence regarding his identity as one of the intruders. Tyson points out that one witness identified the clothing worn by the intruder identified as Tyson as navy blue pants and a navy blue sweatshirt with white diamond stitching around the hood, while another witness identified his clothing as a blue and white sweatshirt and navy pants, but never stated that the sweatshirt had a hood. Tyson further contends that witness testimony at trial conflicted with that given at the preliminary hearing, when Ferris and his friends stated they had no idea who the intruders were. Moreover, Tyson argues the witness testimony identifying him as one of the intruders conflicts with testimony by Tyson's alibi witnesses who stated that Tyson was at another location before, during and after the time of the offense. Therefore, Tyson requests the jury verdict be reversed.
 {¶ 8} In reviewing whether a conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Martin (1983), 20 Ohio App.3d 172. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997), 78 Ohio St.3d 380,387, 1997-Ohio-52, quoting State v. Martin (1983), 20 Ohio App.3d 172,175.
 {¶ 9} At trial, Ferris testified that he had never been introduced to Tyson, but knew of him through Nola Webb, a mutual friend. Ferris stated that on July 30, 2003, he recognized Tyson at the door of his home when he asked about the car. Additionally, after the intruders entered his residence, but before Ferris was taken upstairs to get his money from the bedroom, he looked over at the front door and saw Tyson looking at him. When Tyson realized Ferris was looking at him, Ferris stated, he looked down and pulled his hood down over his face. Ferris testified that Tyson was wearing the same clothes he had on when he was at the door twenty minutes earlier.
 {¶ 10} Brian Bishop, one of the friends who was at Ferris's residence at the time of the robbery, testified that he had been introduced to Tyson, but had known him for less than a year. Bishop stated that Tyson came by around midnight on July 30, 2003 and asked if Ferris was interested in selling his car. Bishop testified that he talked with Tyson about the car for a few minutes before Tyson left. Bishop further testified that twenty minutes later, when the four men came into the Ferris residence, he recognized one of them as Tyson. Bishop stated that Tyson was wearing the same clothes he had on earlier and that he also was able to see Tyson's face.
 {¶ 11} Nola Webb testified that on the night of the robbery, Tyson called her around 10:30 p.m., asking for Ferris's phone number. During the course of the conversation, Tyson stated that he was not at home, but was in a car with someone else. When she spoke with him about it later, Tyson stated that he never went to Ferris's residence and never made a phone call to her. Instead, Tyson told her that he was babysitting at the home of his fiancée at the time of the robbery. Webb testified that later, however, Tyson told her that he had been having sex with another girl at the time of the robbery.
 {¶ 12} Tyson's fiancée, Rhonda Abram, testified on his behalf. Abram stated that she was home between 8:00 p.m. and 11:30 p.m. on July 30, 2003, the night of the robbery, and that Tyson was there the entire time. When Abram left for work around 11:30, her neighbor, Ashley Kelly, was walking toward her house.
 {¶ 13} Kelly testified that she did go to Abram's house around 11:30 p.m. She stated that she thought it was on July 30, 2003 but she was not sure of the date. She stated that she and Tyson watched movies and she went home around 2:00 a.m. Kelly stated that Tyson never left the house during that time.
 {¶ 14} Tyson also testified at trial. He stated that he had never met Ferris and did not go to his house on July 30, 2003. Tyson stated he was at home with his children and Kelly during the time of the robbery. He testified that he did not call Webb on the night of July 30, 2003 and that he did not own a navy blue sweatshirt or pants resembling the clothing described by Ferris and Bishop as that worn by one of the intruders.
 {¶ 15} Although the testimony of Ferris, Bishop and Webb conflicted with that of Abram, Kelly and Tyson, the jury chose to believe that Tyson was one of the intruders into Ferris's residence. We cannot conclude that its decision was in error. Thus, after reviewing the record, we do not find that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Appellate courts are not factfinders; we neither weigh the evidence nor judge the credibility of witnesses. Cross Truckv. Jeffries (Feb. 10, 1982), 5th Dist. No. CA-5758. It is not the role of an appellate court to choose between conflicting testimony but to determine if there is sufficient evidence to support the conclusions of the trier of fact. Id. Upon a complete review of the testimony and the record in the case sub judice, we find that such evidence exists. Therefore, we hold that the jury's decision was not against the manifest weight of the evidence.
 {¶ 16} Accordingly, Tyson's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. II The trial court imposed a sentence contrary to law.
 {¶ 17} Tyson was found guilty of one count of Aggravated Robbery, a felony of the first degree in violation of R.C. 2911.01(A)(1) with a firearm specification pursuant to R.C. 2941.145 and one count of Burglary, a felony of the second degree in violation of R.C. 2911.12(A)(1) with a firearm specification pursuant to R.C. 2941.145. The trial court herein ordered Tyson to serve eight years in prison for the aggravated robbery, with a mandatory and consecutive three-year prison term for the firearm specification. On the burglary charge, the trial court ordered Tyson to serve six years in prison, with a mandatory three-year prison term for the firearm specification. The trial court ordered the six year prison term to be served consecutively to the aggravated robbery sentence, but found that the second firearm specification merged with the first and ordered the mandatory three-year sentences be served concurrently. In aggregate, Tyson was sentenced to a seventeen year term of imprisonment.
 {¶ 18} Tyson argues that his sentence is contrary to law because the trial court made erroneous findings when determining the seriousness and recidivism factors, pursuant to R.C. 2929.12(A). Tyson contends that the trial court's findings that the victim suffered serious psychological harm and that the offense was part of an organized criminal activity were unsubstantiated by the record. Further, Tyson asserts that the trial court's reason for imposing consecutive sentences, that "the harm was so great and unusual that a single term does not adequately reflect the seriousness of the conduct" due to his role as a set-up man for the offense, did not have any factual connection to the actual harm committed.
 {¶ 19} On review, a sentence imposed by a trial court will not be disturbed absent a showing by clear and convincing evidence that the sentence is unsupported by the record; the procedure of the sentencing statutes was not followed or there was not a sufficient basis for the imposition of a prison term; or that the sentence is contrary to law. See R.C. 2953.08(G).
 {¶ 20} Before consecutive sentences may be imposed, the trial court is required to make several findings in accordance with R.C. 2929.14 and R.C. 2929.19. First, the sentencing court must find that consecutive sentences are "necessary to protect the public" or to "punish the offender." R.C. 2929.14(E)(4). Second, the court must find that consecutive sentences are "not disproportionate to the seriousness of the offender's conduct and to the danger he poses to the public." Id. Finally, the trial court must find the existence of one of the three following circumstances:
(a) the offender committed one or more of the multiple offenses whilethe offender was awaiting trial or sentencing * * * or was underpost-release control for a prior offense;
 (b) * * * the harm caused by * * * the multiple offenses was so greator unusual that no single prison term for any of the offenses committedas part of a single course of conduct adequately reflects the seriousnessof the offender's conduct;
 (c) the offender's history of criminal conduct demonstrates thatconsecutive sentences are necessary to protect the public from futurecrime by the offender.
 {¶ 21} In addition to these findings, the trial court must give its reasons for imposing consecutive sentences. See R.C. 2929.19(B)(2)(c). Therefore, the trial court must not only make the required findings under R.C. 2929.14(E)(4), but must also substantiate those findings by "identifying specific reasons supporting the imposition of consecutive sentences." State v. Brice (March 29, 2000), 4th Dist. No. 99CA21.
 {¶ 22} The trial court, in the case sub judice, made all of the necessary findings. The trial court determined that consecutive sentences were necessary to protect the public and to punish the defendant; were not disproportionate to the conduct of the defendant and that the harm done by the defendant was so great and unusual that a single term would not adequately reflect the seriousness of the defendant. In discussing its reasons for imposing consecutive sentences, the trial court stated, at sentencing, that Tyson was the facilitator and that under the guise of asking about a car, he made sure the victims were there, setting up the robbery for the others involved. As a result of the robbery, the trial court found that the victims suffered serious psychological, physical and economic harm.
 {¶ 23} We find that in imposing consecutive sentences, the trial court did not act contrary to law. The trial court made all the required findings and, additionally, stated its reasons for choosing to sentence Tyson to consecutive terms. Therefore, we hold that the trial court satisfied the mandates of R.C. 2929.14(E) and R.C. 2929.19(B).
 {¶ 24} Moreover, we find that the trial court's reasons for imposing consecutive sentences are supported by the record. Evidence was introduced that Tyson went to Ferris's home inquiring about a car for sale, but Ferris testified that his car had not been advertised for sale. After a brief conversation with Ferris, Tyson left the residence, returning approximately twenty minutes later with three other men who proceeded to rob Ferris at gunpoint. Although Tyson claims his actions had no factual connection to the harm done, the record reflects that his actions were the sole factual connection to the harm done to the victims. As the court noted at sentencing, Tyson "was the connection, the only connection the evidence showed, between the criminals and the victims. He was the set-up man and basically made sure that this was an opportunity for the criminals to commit the crimes." We find that this evidence was sufficient for the court to conclude that the robbery constituted organized criminal activity, a factor indicating an offender's conduct is more serious than that normally constituting the offense of robbery, pursuant to R.C. 2929.12.
 {¶ 25} The record also supports the trial court's finding that the victims suffered physical, psychological and economic harm as a result of the robbery. Ferris testified that the intruders kept a gun to his head and demanded money from him. After Ferris gave the men all the money he had, the intruder with the gun to Ferris's head told him that he was going to kill him and continued to threaten him until Ferris convinced him he had no more money. Then another one of the men struck Ferris in the face with a gun. Brian Bishop testified that another one of the intruders held a gun on him and threatened to shoot him if he moved.
 {¶ 26} After review, we find that Tyson has not demonstrated to this court, by clear and convincing evidence, that his sentence is unsupported by the record; that the procedure of the sentencing statutes was not followed or there was not a sufficient basis for the imposition of a prison term; or that the sentence is contrary to law. Therefore, do not find that the trial court erred in imposing Tyson's sentence.
 {¶ 27} Tyson's second assignment of error is overruled.
 {¶ 28} Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 Bryant and Shaw, J.J., concur.