[Cite as *State v. Flanigan*, 2011-Ohio-408.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,                                        CASE NO. 13-10-28

    PLAINTIFF-APPELLEE,

  v.

COLEMAN D. FLANIGAN,                           O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 09 CR 0220

Judgment Affirmed

Date of Decision:  January 31, 2011

APPEARANCES:

    *Jonathan G. Stotzer,* for Appellant

    *Derek DeVine,* for Appellee

**PRESTON, J.**

{¶1} Appellant-defendant, Coleman Flanigan (hereinafter "Flanigan"), appeals the June 30, 2010 judgment entry of sentence entered against him by the Seneca County Court of Common Pleas, which sentenced him to maximum and consecutive sentences on two counts of vehicular assault and two counts of failure to stop after an accident. For the reasons that follow, we affirm.

{¶2} The facts of this case are largely not in dispute and are stated as follows. On September 11, 2009, around 9:15 p.m., Flanigan struck two bicyclists who were traveling on County Road 6 in Seneca County. At the time of the accident, the bicyclists had been wearing highly reflective jerseys and both bikes had been equipped with taillights. As a result of the impact of the collision, the victims were thrown away from the road and into a field. It is undisputed that Flanigan left the scene of the accident, did not report the accident to law enforcement, and did not contact medical services. It was approximately 45 minutes later when the bicyclists were eventually discovered and life-flighted to a hospital in Toledo, Ohio.

{¶3} As a result of the accident, both victims suffered severe injuries requiring hospital stays and substantial medical treatment. One victim needed 43 stitches over his right eye, suffered an open wound on his left leg, had a fractured eye socket, broken tooth, and experienced memory loss. The other victim suffered

a severe head injury, experienced severe pain in his neck, back, and head, lost all mobility and sensation to his legs, and similarly experienced memory loss. The record indicates that the second victim was believed to have been rendered a quadriplegic as a result of the accident, but by the time of the sentencing hearing, the victim had regained limited mobility and sensation in his legs.

{¶4} On September 12, 2009, Norwalk police officers received information that a red car, which they subsequently discovered belonged to Flanigan, may have been involved in the hit-skip accident. The police officers located the red car and discovered lime green and pinkish fibers on the right side of the car's windshield, which were later determined to be fibers from the clothing worn by the victims. Upon speaking to Flanigan, police officers noted a stale odor of alcohol on his breath and that he had red glassy eyes. Flanigan acknowledged that the red car belonged to him. After being read his *Miranda* warnings, Flanigan agreed to speak to the officers. He indicated that he had been driving down County Road 6 the night before, when he suddenly struck something, which he thought had been a deer. Flanigan said that he stopped the car, opened his door and looked around, but did not see any "bicyclists or deer." Police officers noted, without having informed Flanigan about their investigation concerning the bicyclists, that Flanigan specifically mentioned at three separate times that he had not seen any "bicyclists" that evening.

{¶5} Ohio State Highway Patrol investigators arrived at Flanigan's residence around the same time, and Flanigan provided them with further information about the accident. In particular, Flanigan said that he had been working that day at Arthur Corp. until around 4 p.m. when he left work and stopped at a doctor's office to pick up prescriptions for Xanax and Tramadol. Flanigan said that he then went and filled the prescriptions and took one of the Xanax with a Mountain Dew. Afterwards, he had stopped at his girlfriend's mother's house, but when no one answered the door, he proceeded to drive back home and took the back roads. Flanigan said that at some point when he had been driving on one of the back roads, he saw another oncoming vehicle approaching, so he moved to the right, and after doing so he heard an impact on the side of his car and then saw something dark roll over the windshield. Although, Flanigan said that he did stop and open his doors, he ended up leaving because he said that he did not see anything.

{¶6} On September 30, 2009, the Seneca County Grand Jury indicted Flanigan with the following four counts: count one of Vehicular Assault in violation of R.C. 2903.08(A)(2)(b), a felony of the fourth degree; count two of Vehicular Assault in violation of R.C. 2903.08(A)(2)(b), a felony of the fourth degree; count three of Failure To Stop After An Accident in violation of R.C. 4549.02(A), a felony of the fifth degree; and count four of Failure To Stop After

An Accident in violation of R.C. 4549.02(A), a felony of the fifth degree. Flanigan entered pleas of not guilty as to all of the counts and retained defense counsel.

{¶7}  Eventually, the State and Flanigan entered into a plea agreement with an open sentencing recommendation, whereby Flanigan agreed to plead guilty to all counts in the indictment despite the fact that there would be no agreed sentence recommendation presented to the trial court.

{¶8}  On December 18, 2009, a change of plea hearing was held.  Prior to accepting Flanigan's guilty plea, the trial court cautioned Flanigan that it could impose a maximum sentence on each count and could run the sentences consecutively for a maximum sentence of sixty (60) months, or five (5) years. (Dec. 18, 2009 Tr. at 8-11).  Ultimately, Flanigan indicated that he understood the consequences and still wished to proceed in changing his pleas to guilty.  (Id. at 7-22).  Thereafter, the trial court accepted his change of plea, made findings of guilt as to each of the counts in the indictment, and referred the matter for a pre-sentence investigation ("PSI").  (Dec. 18, 2009 Tr. at 21-22); (Dec. 21, 2009 JE).

{¶9}  A PSI was subsequently prepared and given to the trial court at the sentencing hearing, which was held on February 3, 2010.  No one objected to the contents of the PSI.  During the sentencing hearing, the trial court heard statements from the State, the Victim's Advocate, a few family members' of the

two victims, Flanigan's attorney, and Flanigan himself. After hearing all of the statements, reviewing the PSI, and considering the purposes and principles of sentencing, the trial court ultimately sentenced Flanigan to a prison term of eighteen (18) months on count one, a prison term of eighteen (18) months on count two, a prison term of twelve (12) months on count three, and a prison term of twelve (12) months on count four. (Feb. 3, 2010 Tr. at 39-47); (Feb. 4, 2010 JE). The prison terms imposed were the maximum statutorily prescribed sentences for each of the offenses. In addition, the trial court ordered that the sentences be served consecutively to one another, for a total prison term of five (5) years. (Feb. 3, 2010 Tr. at 39-47); (Feb. 4, 2010 JE).

{¶10} On May 3, 2010, a restitution hearing was held, whereby the trial court ordered Flanigan to pay $51,249.90 in restitution. (May 3, 2010 Tr. at 2-3); (May 10, 2010 JE). On June 30, 2010, the trial court filed its final judgment entry of sentence, which included both the sentence and the restitution order. (June 30, 2010 JE).

{¶11} Flanigan now appeals and raises the following two assignments of error. For ease of our discussion, we elect to address his two assignments of error together.

**ASSIGNMENT OF ERROR NO. I**

**THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING APPELLANT TO THE MAXIMUM**

**POSSIBLE PENALTIES FOR THE OFFENSE FOR WHICH HE WAS CONVICTED.**

**ASSIGNMENT OF ERROR NO. II**

**"THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING APPELLANT TO THE CONSECUTIVE SENTENCES FOR THE OFFENSES FOR WHICH HE WAS CONVICTED." [SIC]**

**{¶12}** In his first and second assignments of error, Flanigan argues that the trial court abused its discretion in sentencing him to maximum, consecutive sentences for each of the offenses for which he was convicted. We disagree.

**{¶13}** A trial court's sentence will not be disturbed on appeal absent a defendant's showing by clear and convincing evidence that the sentence is unsupported by the record; the sentencing statutes' procedure was not followed or there was not a sufficient basis for the imposition of a prison term; or that the sentence is contrary to law.[1] *State v. Ramos*, 3d Dist. No. 4-06-24, 2007-Ohio-767, ¶23 (the clear and convincing evidence standard of review set forth under R.C. 2953.08(G)(2) remains viable with respect to those cases appealed under the applicable provisions of R.C. 2953.08(A), (B), and (C)); *State v. Rhodes*, 12th Dist. No. CA2005-10-426, 2006-Ohio-2401, ¶4; *State v. Tyson*, 3d Dist. Nos. 1-

---

[1] We note that the Supreme Court of Ohio recently released a plurality opinion in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, which established a two-part test utilizing both the clear and convincing and abuse of discretion standard of review in reviewing felony sentencing decisions under R.C. 2953.08(G). While we cite to this Court's precedential clear and convincing standard of review, which was affirmed and adopted by three dissenting Justices in *Kalish*, we note that the outcome of our decision in this case would be identical under the *Kalish* plurality's two-part test as well.

04-38, 1-04-39, 2005-Ohio-1082, ¶19, citing R.C. 2953.08(G). Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus; *State v. Boshko* (2000), 139 Ohio App.3d 827, 835, 745 N.E.2d 1111. An appellate court should not, however, substitute its judgment for that of the trial court because the trial court is "'clearly in the better position to judge the defendant's likelihood of recidivism and to ascertain the effect of the crimes on the victims.'" *State v. Watkins*, 3d Dist. No. 2-04-08, 2004-Ohio-4809, ¶16, quoting *State v. Jones*, (2001), 93 Ohio St.3d 391, 400, 754 N.E.2d 1252.

{¶14} As this Court has repeatedly stated, after the Ohio Supreme Court's decision in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, trial courts have full discretion in imposing sentences within the statutory range, and thus are no longer required to make judicial findings or give reasons for a sentence that is more than the minimum. *Foster*, 2006-Ohio-856, paragraph seven of the syllabus. However, trial courts must still consider the overriding purposes of felony sentencing, specifically listed in R.C. 2929.11(A), and the seriousness of the offender's conduct and the recidivism of the offender pursuant to R.C. 2929.12(A). Id. at ¶¶36-42.

**{¶15}** Here, the trial court sentenced Flanigan to eighteen (18) months imprisonment on both counts one and two, which were felonies of the fourth degree; and twelve (12) months imprisonment on both counts three and four, which were fifth degree felonies. Although the sentences imposed were the maximum terms of imprisonment a trial court could impose pursuant to R.C. 2929.14(A)(4) & (5), the terms were within the statutory ranges, and as such, the sentences imposed were not contrary to law. *State v. Guajardo*, 3d Dist. No. 4-07-24, 2008-Ohio-3599, ¶16 (trial court's imposition of the maximum sentence was supported by the record and was not contrary to law.) Moreover, at the sentencing hearing and in its judgment entry, the trial court stated that it had "reviewed the principals and purposes of felony sentencing under Ohio Revised Code Section 2929.11," and had "balanced the seriousness and recidivism factors under Ohio Revised Code Section 2929.12." (Feb. 3, 2010 Tr. at 39); (June 30, 2010 JE). Overall, the trial court held that "[a]fter consideration of all factors, after consideration, recommendation made by both counsel, the court finds that a prison term is consistent with the purposes and principals of felony sentencing under Section 2929.11; and, that the shortest prison term will demean the seriousness of the defendant's conduct and will not adequately protect the public from future crime by this defendant or others." (Feb. 3, 2010 Tr. at 42); (June 30, 2010 JE).

Therefore, the trial court's sentence was rendered in conformance with the sentencing statutes.

{¶16} Furthermore, Flanigan has also failed to demonstrate by clear and convincing evidence that the trial court's maximum sentences were not supported by the record, or that there was not a sufficient basis for the imposition of a prison term. *Ramos*, 2007-Ohio-767, at ¶23. While Flanigan claims that he had no malice towards the victims and has shown "profound" remorse for his actions, the record illustrates that his conduct that night was extremely reckless and the physical harm he caused was severe. After he struck the two victims with his vehicle, he chose to flee the scene of the accident and not report the accident to law enforcement or medical services. Not only were the victims left unconscious in a field for some time until they were eventually discovered by a passerby, but as a result of the collision, the two victims suffered severe and debilitating injuries. One of the victims needed 43 stitches over his right eye, suffered an open wound on his left leg, had a fractured eye socket, broken tooth, and experienced memory loss. The other victim suffered similar, but more serious injuries. In fact, at the time the PSI was written, the other victim was thought to have been rendered a quadriplegic as a result of the accident, but after undergoing immense physical therapy, he was able to regain limited mobility in his legs at the time the sentencing hearing was conducted.

{¶17} Flanigan also argues that he had no substantial prior driving record to support a finding that he is generally reckless or dangerous on the roads. While Flanigan may not have had a prior driving record, the PSI indicates that Flanigan had a prior criminal record, which included a first degree misdemeanor assault conviction, a first degree misdemeanor theft conviction, and a possession of drug paraphernalia misdemeanor conviction. (PSI). Moreover, his actions that night alone demonstrate that he consciously disregarded or was indifferent to the substantial and unjustifiable risk of harm that he had created.

{¶18} Furthermore, Flanigan argues that the trial court improperly concluded that he had been driving impaired when he had struck the two bicyclists. At the sentencing hearing, the trial court stated the following:

> **While there is no indication anywhere in the record, in the presentence report that Mr. Flanigan was speeding, there is considerable indication that Mr. Flanigan was driving impaired. It appears based upon what is before this court that Mr. Flanigan was either drunk, stoned or high or, a combination thereof; and, as a result of the collision, the crash, substantial life changing serious injuries happened to Brett and Shane.**
>
> **The crash in itself is horrific, of leaving the scene because you were afraid, in my opinion, for your own safety since you were driving impaired is inexcusable.**

(Feb. 3, 2010 Tr. at 41).

{¶19} While there may not have been any formal evidence demonstrating Flanigan's state of impairment on the night of the accident, we believe that under

the circumstances, it was reasonable for the trial court to have concluded that he had been impaired. First of all, Flanigan provided a statement in the PSI giving his version of the events, which stated:

> **I was charged with hitting two people on bikes and also hit and run. I never meant to hit anybody. *I don't remember what I was doing or why I didn't see them, but after I realized I had hit something I got freaked out and just kept going not wanting to know what it was or who it may have been.* Now I have to live with what I did every day of my life and it is not easy. When I think of the pain I caused them and their family I get very depressed. I never been [sic] more sorry for anything I ever done. I know it doesn't change anything or the way their family feels about me, but I still pray for their recovery and their forgiveness.**

(PSI); (emphasis added). Additionally, Flanigan also acknowledged in the PSI that he had a history of abuse of drugs and alcohol dating back to when he was twelve years old. (Id.). In particular, Flanigan admitted to regularly using a whole host of drugs including ecstasy, marijuana, and LSD, and being a binge user of barbiturates, prescription drugs, and opiates. (Id.). Significantly, he admitted in the PSI that his last usage of barbiturates, prescription drugs, and opiates had been *on the date of the crash*. (Id.); (emphasis added).

{¶20} Moreover, we believe that it was certainly within the trial court's discretion to make this inference based on the record for purposes of sentencing. See *State v. Hines*, 4th Dist. No. 09CA36, 2010-Ohio-2749, ¶12 ("trial court could have inferred, based upon these facts, that the crime committed was drug related").

Given all of the information contained in the PSI, as well as Flanigan's own statement, we believe that it was reasonable for the trial court to have concluded that Flanigan had been impaired the night of the accident and had driven away because he had been afraid of getting caught driving impaired.

{¶21} Finally, this Court notes that Flanigan has failed to separately address his second assignment of error and does not provide any reasons in support of his argument that the trial court abused its discretion in ordering all of his sentences to be served consecutively with one another. App.R. 16(A)(7). Accordingly, we may disregard this assignment of error pursuant to App.R. 12(A)(2). Nevertheless, given the evidence in the record and our reasoning above, we cannot find that the trial court erred in sentencing Flanigan to consecutive sentences for an aggregate of five (5) years imprisonment. At the sentencing hearing, when deciding whether to run the sentences concurrently or consecutively, the trial court noted that had Flanigan stayed and been found to have been driving impaired, he would have been facing two charges of aggravated vehicular assault, which were felonies of the third degree and together would have carried a prison term of ten (10) years. (Feb. 3, 2010 Tr. at 43). However, the trial court said that Flanigan had not stayed, but rather had left the scene, and "based on that leaving the scene, this court will run all sentences consecutively to each other." (Id.).

- 13 -

{¶22} Again, the trial court's sentence was not contrary to law and was rendered in conformance with the sentencing guidelines. Furthermore, we find that Flanigan failed to demonstrate by clear and convincing evidence that the trial court's consecutive sentences were not supported by the record or that there was not a sufficient basis for the imposition of consecutive sentences. *Ramos*, 2007-Ohio-767, at ¶23. Despite Flanigan's initial claims that he had thought he had only hit a deer, there is evidence in the record that indicates that Flanigan had known, or at least had had a very good idea, as to who he had hit that night. Flanigan's statements to the police officers the next night illustrate that Flanigan knew that he had hit the two bicyclists and not a deer. Moreover, as Flanigan himself acknowledged for his PSI statement, he realized he had hit something that night and "freaked out and just kept going not wanting to know what it was or who it may have been." (PSI). We note that Flanigan's statements to law enforcement about going back and checking the area after the collision appear to be inconsistent with his statement in the PSI report in which he stated that he just kept driving. Despite his inconsistent version of the events, even if he had checked the area, Flanigan said he only did a *brief* check of the area, without even getting out of his car, and decided to drive away leaving his victims lay unconscious in a field. Moreover, while Flanigan may not have known the exact extent of his victims' injuries, at the time he chose to drive away, he could have

called and reported the accident to either law enforcement or medical services. However, Flanigan failed to notify anyone of the accident as well, and as a result, his unconscious victims were left in the field unnoticed for 45 minutes.

{¶23} Overall, based on the record in this case, we cannot find that the trial court erred in imposing maximum, consecutive sentences for an aggregate term of five (5) years imprisonment.

{¶24} Flanigan's first and second assignments of error are, therefore, overruled.

{¶25} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS, P.J., concurs.**

**/jnc**

**WILLAMOWSKI, J., concurs separately.**

{¶26} I concur fully with the majority opinion, however write separately to emphasize that the appropriate standard of review was applied. The standard of review for sentences was set forth in the plurality opinion of *Kalish*, supra. In *Kalish*, four panel members noted that R.C. 2953.08(G) requires that appellate courts require appellants to meet a clearly and convincingly contrary to law

standard of review when reviewing a sentence.[2] For example, if the sentencing court imposed consecutive sentences, as in this case, the standard of review would be whether appellant has shown that the sentence was clearly and convincingly contrary to law. However, if the appeal is based upon the proper application of the factors in R.C. 2929.12, four panel members in *Kalish* would require review using an abuse of discretion standard as specifically set forth in R.C 2929.12.[3]

{¶27} In his assignments of error, Flanigan alleges that the trial court erred by sentencing him to maximum, consecutive sentences. Flanigan's appeal of his felony sentence did not raise issue with the application of the factors set forth in R.C. 2929.12, which would require a review using an abuse of discretion standard. Thus, the clearly and convincingly standard used to review this case, as set forth in R.C. 2953.08(G)(2) is the proper standard of review herein.

---

[2]  Justices Pfeifer, Lundberg Stratton, Lanzinger, and Judge Willamowski, sitting by assignment, all reached this conclusion.
[3]  Justices O'Connor, Moyer, O'Donnell, and Judge Willamowski, sitting by assignment, concurred in this position, although the first three would use both standards of review in all cases.